# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SHEILA LYONS, DVM<br>and HOMECOMING<br>FARM, INC.,<br><br>       Plaintiffs<br><br>v.<br><br>ROBERT GILLETTE,<br>THE BOARD OF DIRECTORS<br>OF THE AMERICAN COLLEGE<br>OF VETERINARY SPORTS<br>MEDICINE AND<br>REHABILITATION, INC., and<br>THE AMERICAN VETERINARY<br>MEDICAL ASSOCIATION, INC.,<br><br>      Defendants | **CIVIL COMPLAINT<br>FOR DAMAGES AND<br>EQUITABLE RELIEF<br>AND DEMAND FOR<br>TRIAL BY JURY** |

## INTRODUCTION

1.    This is an action for federal trademark infringement, federal trademark infringement and unfair competition, common law trademark infringement, federal trademark dilution, state trademark dilution and injury to business reputation, federal copyright infringement, state copyright infringement, common law unfair competition, misappropriation of intellectual property, state unfair and deceptive trade practices, libel and slander, loss of business opportunity, intentional infliction of emotional distress, interference with advantageous business relations, and other violations of state and federal law arising out of the defendants' intentional infringement and dilution of the plaintiff's registered trademark the "American College of Veterinary Sports

Medicine and Rehabilitation" (hereinafter "ACVSMR") and infringement of Plaintiffs' copyrighted work product. The plaintiff demands a trial by jury on all counts of this Complaint so triable.

PARTIES

2.     Plaintiff, Sheila Lyons, DVM (hereinafter "Doctor Lyons"), is a resident of the Commonwealth of Massachusetts and a citizen of the United States.

3.     Homecoming Farm, Inc. is an active not-for-profit 501(c)(3) corporation organized and incorporated under the laws of the State of New Hampshire on November 18, 1992 with a principal place of business located in Brockton, Plymouth County, Commonwealth of Massachusetts.

4.     Defendant, Robert Gillette (hereinafter "Gillette"), is a licensed veterinarian and a resident of the State of Alabama and a citizen of the United States.

5.     Defendant, Board of Directors, American College of Veterinary Sports Medicine and Rehabilitation, Inc., is, upon information and belief, a not-for-profit corporation organized by Gillette on or about June 2, 2011 under the laws of the State of Colorado with a principal place of business located at 909 Bibb Avenue, Auburn, Alabama.  Upon information and belief the members of the Board of Directors of the so-called American College of Veterinary and Sports Medicine and Rehabilitation include: President, Linda Blythe, DVM, Past President, Robert Gillette, DVM, President-Elect, Hilary Clayton, Vice President, James Cook, DVM, Secretary Treasurer, Kevin K. Haussler, DVM, Small Animal Rehabilitation Regent: Christine Zink, DVM, Small Animal Sports Medicine Regent, Joseph Wakshlag, DVM,  Equine Rehabilitation  Regent, Andris Kaneps, DVM, and Equine Sports Medicine Regent, Wayne McIlwraith, DVM.

5.     Defendant, American Veterinary Medical Association, Inc. (hereinafter "AVMA"), is a not-for-profit association representing more than 81,500 veterinarians nationwide working in private and corporate practice, government, industry, academia, and uniformed services and, upon

information and belief, is organized and incorporated under the laws of the State of Illinois with a principle place of business located at 1931 North Meacham Road, Suite 100, Schaumburg, Illinois.

6.      The AVMA regularly does business within the Commonwealth of Massachusetts, solicits funding, membership dues and provides insurance and other benefits to more than 8,321 members within the Commonwealth of Massachusetts.

7.      At all times relevant to this Complaint both Doctor Lyons and Gillette were members of the AVMA.

RELATED NON-PARTIES

8.      Auburn University, College of Veterinary Medicine, is a school of veterinary medicine located 166 Greene Hall, Auburn, Alabama.  At all times relevant to this Complaint, Gillette was an employee of Auburn University College of Veterinary Medicine.

JURISDICTION

9.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1338(b) {a state claim of unfair competition joined with substantial and related federal claims under trademark and copyright laws); 28 U.S.C. § 1367 (supplemental jurisdiction); and the doctrines of ancillary and pendent jurisdiction.

10.     This Court has personal jurisdiction over the defendants because, upon information and belief, the defendants conduct business within the Commonwealth of Massachusetts and each defendant has committed the acts of trademark and copyright infringement and federal and state unfair competition and caused tortious injury within the Commonwealth of Massachusetts either by acts committed within the Commonwealth of Massachusetts or by acts committed outside of the Commonwealth of Massachusetts and because each defendant regularly does or solicits business or engages in other persistent courses of conduct or derives substantial revenue for goods used or consumed or services rendered within the

3

Commonwealth of Massachusetts. Defendants have established minimum contacts with the forum such that the exercise of jurisdiction over them would not offend traditional notions of fairness and substantial justice.

11.     Each defendant has been and continues to do business within the Commonwealth of Massachusetts by maintaining websites and soliciting funds within the Commonwealth of Massachusetts. Upon information and belief, defendant Board of Directors of the American College of Veterinary Sports Medicine and Rehabilitation, Inc. and The American Veterinary Medical Association, Inc. also solicit members and collect membership fees and conduct conferences and educational seminars and provide insurance and other benefits to members within the Commonwealth of Massachusetts.

12.     Defendants have made and continue to make infringing websites available to countless users within the District, have misappropriated and infringed on Plaintiffs' trademark and copyrighted work product originating on computer servers located in the District, have promoted and continue to promote their infringing websites to countless persons using the internet and social media within this District and have generated revenue and other benefits therefrom.

13.     This Court has personal jurisdiction over the defendants pursuant to M.G.L., Chapter 233A § 3 (the Massachusetts long-arm statute) in that the defendants have continuously and systematically solicited business within the Commonwealth of Massachusetts and the District of Massachusetts; have caused tortious injury within the Commonwealth of Massachusetts by acts or omissions committed within the Commonwealth of Massachusetts and the District of Massachusetts; causing tortious injury within the Commonwealth of Massachusetts by acts and omissions committed outside the Commonwealth of Massachusetts while regularly doing or soliciting business or engaging in a persistent course of conduct, deriving substantial revenue from

goods and services consumed within the Commonwealth of Massachusetts and within the District of Massachusetts.

## VENUE

14.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(c) and 1400(a) because the plaintiffs reside or maintain corporate headquarters within this judicial district.

15.     Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and resulting harm giving rise to the alleged claims in this action occurred within this judicial district.

## GENERAL ALLEGATIONS

### The Creation And Registration Of The American College Of Veterinary Sports Medicine and Rehabilitation ("ACVSMR") Trademark And Registration of Copyrighted Work Product

16.     Doctor Lyons created and is the lawful owner of the registered trademark "The American College of Veterinary Sports Medicine and Rehabilitation", Serial No. 78635662 which was registered by Doctor Lyons on May 24, 2005.

17.     Since 1995, Doctor Lyons has, without interruption, conducted research, developed educational programs, conducted classes, clinical seminars, conferences, workshops, created internships and externships and has solicited and obtained grant support for veterinary sports medicine and rehabilitation individually and on behalf of Homecoming Farm, Inc. in the name of ACVSMR and continues to do so.

18.     As a result, the ACVSMR trademark, which was created by Doctor Lyons in 1995 as a project of Homecoming Farm, Inc., is a well-known mark and has a national and international reputation and has established certain standards in veterinary sports medicine and veterinary rehabilitation medicine, research and education which are unique.

5

19.     Doctor Lyons continues to conduct research, hold conferences and seminars, create educational programs and solicit and receive funding in the name of ACVSMR, has done so continuously since 1995, and has no plans to terminate this important work.  Doctor Lyons has properly registered and owns or controls the copyrights and or exclusive ownership rights to her research and teaching materials and other educational materials and work product associated with the ACVSMR Mark.

20.     The ACVSMR Mark and all related copyrighted materials are registered in the Commonwealth of Massachusetts.

<u>The Creation Of Homecoming Farm, Inc.</u>

21.     Doctor Lyons created Homecoming Farm, Inc., in 1992 to conduct research in the field of veterinary sports and rehabilitative medicine, to offer education and consulting services in this emerging specialty field and to bring together experts from the human and veterinary medical and general sciences professions to establish a newly recognized specialty field in Veterinary Sports Medicine and Rehabilitation in order to benefit all animals and advance the science of veterinary medicine.

22.     As a result of this specialized education and research, Doctor Lyons has presented scientific papers and seminars in Equine Physical Medicine and Rehabilitation and Equine Sports Medicine to veterinarians, farriers, physiotherapists and horsemen in Oregon, Florida, Kentucky, California, Illinois, Indiana, Colorado, Arizona, Washington, DC, Virginia, Mississippi, Ohio, New York, and in England, France, Dubai, Australia, Brazil, Germany, and Sweden.  She has also acted as a consultant to International Equestrian Teams in The United States, Australia, Germany, Brazil, Sweden, Denmark, and the United Kingdom.

23.     From October of 1999 through January 2000, Doctor Lyons was retained to act as an expert witness on behalf of the Ohio Veterinary Board and the Ohio Attorney General in a case involving the prosecution of individuals involved in the inappropriate use of performance enhancing drugs in race horses and her testimony led to sweeping nationwide changes in the regulation of drugs administered to sport horses.

24.     Homecoming Farm, Inc., conducts research in the further development and effective transfer of physical medicine and rehabilitation methodologies in practice to equine patients; provides education to horsemen, veterinary students, veterinarians, farriers, and physical therapists in these methods; and offers clinical consulting services and seminars worldwide.

### Origination Of The American College Of Veterinary Sports Medicine And Rehabilitation™ (ACVSMR)

25.     The American College of Veterinary Sports Medicine and Rehabilitation™ (hereinafter "ACVSMR") was created by Doctor Lyons in 1996 through collaborative efforts between Homecoming Farm, Inc.'s founder and director, Doctor Lyons, and physician colleagues in the analogous human medical specialty field. Doctor Lyons completed a 3-year post-doctoral training and education program in the human medical specialty of Physical Medicine and Rehabilitation with a focus on Sports Medicine. She is the only veterinarian to have accomplished this and is a member of The American Academy of Physical Medicine and Rehabilitation.

26.     The American College of Veterinary Sports Medicine and Rehabilitation's™ ("ACVSMR") mission objective is to improve health for all horses while optimizing the athletic potential and safety of sport horses through continued research, education and proactive veterinary services.

27.     Through the ACVSMR's educational programs, new jobs are created in the horse industry for paraprofessionals who wish to work with horses in this emerging specialty field.

28.    The ACVSMR's educational programs and initiatives are dedicated to the development of a veterinary medical field that is modeled after the analogous specialty fields in human medicine. Educational programs and examination guidelines and professional specialty requirements were developed and adapted following the standards in place in human medicine.

### The Creation Of The American College
### Of Veterinary Sports Medicine And Rehabilitation™ ("ACVSMR")

29.    The American College of Veterinary Sports Medicine and Rehabilitation™ ("ACVSMR") was first formed in 1995 by the Doctor Lyons and first used in commerce on June 18, 1996 and "is the name for the project of Homecoming Farm, Inc.," that was created "to provide education to veterinarians; veterinary students; veterinary physical therapists; farriers; researchers; horsemen; equine healthcare managers; and others worldwide" and was "modeled after the human medical specialty in its scientific methods, educational structure for professionals and paraprofessionals"; and  maintains "a relationship with physician advisors in order to take full advantage of ongoing developments in the human specialty field."

30.    In 1995, Doctor Lyons engaged the professional services of a fundraising consultant agency to help to guide and advise her on the development of materials to be used in the course of commerce, business and for both general and project specific fundraising and program development purposes.

31.    These efforts led to the creation in 1996 of document entitled *The Equine Excellence Initiative©* which named the educational project of Homecoming Farm and Doctor Lyons as "The American College of Veterinary Sports Medicine and Rehabilitation™".

32.    This document formed the basis for all fundraising and strategic planning for the educational and research programs and business materials conducted by Doctor Lyons and Homecoming Farm, Inc., and it was first disseminated in 1996 to individuals, foundations,

institutions, veterinary professionals, professional organizations and associations, professional

boards, advisors, colleagues, horsemen, educators, consultants, attorneys, and others.

     33.     This 1996 copyrighted document of Homecoming Farm, Inc. reads, in part, as

follows:

The American College of Veterinary Sports Medicine and Rehabilitation Project Description

> The American College of Veterinary Sports Medicine and Rehabilitation (ACVSMR) is the name for the project of Homecoming Farm, Inc. that will go forward to provide education to veterinarians; veterinary students; veterinary physical therapists; farriers; researchers; horsemen; equine health care managers and others worldwide. It will be modeled after the human medical specialty in its scientific methods, educational structure for paraprofessionals; and will maintain a relationship with physician advisors so that we can take full advantage of ongoing developments in the human specialty field. The ACVSMR will establish a system for injury reporting and clinical service data collection and storage utilizing the internet so that epidemiological evidence can be collected and shared with researchers worldwide. We will act as advisors to regulatory boards for animal sports so as to ensure that animals are humanely and responsibly managed for the benefit and protection of both the general public's interests and the animals' wellbeing and safety. A main research center will be established and satellite facilities will follow as staffing through our training programs accommodates. Affiliations will be established with equine rescue organizations for the purpose of partnering with our educational programs so that students can get hands on experience in the new techniques and so that the horses have an opportunity to recover.

     34.     This copyrighted document has been disseminated every year since 1996 in the

conduct of business for ACVSMR, Homecoming Farm, Inc., and Doctor Lyons' private veterinary

practice and consulting services to horse owners, veterinarians, consultants, educational

institutions, government agencies, philanthropists, grant makers and others.

     35.     Homecoming Farm, Inc., raised grant monies and offered educational internships,

clinical seminars, lectures, demonstrations; and has continued to conduct research in the name of

The America College of Veterinary Sports Medicine and Rehabilitation™ ("ACVSMR").

36.     Homecoming Farm, Inc. published and copyrighted educational materials, conducted classes and clinical seminars; conducted clinical research studies; and delivered free rehabilitative veterinary care to horses all in the name of ACVSMR.

37.     Grant proposals and other requests for funding for these projects have been developed and submitted in the name of the ACVSMR project each year since 1996.  Doctor Lyons has made numerous presentations to veterinary boards, at conferences, meetings and institutions within the United States and in many countries of the world in the name of the ACVSMR.

38.     In 2001, Doctor Lyons registered the domain names- ACVSMR.org and ACVSMR.com; and the email addresses ACVSMR@attbi.com and ACVSMR@hotmail.com and others.  In the following years, Doctor Lyons has owned and used the e-mail addresses associated with emerging internet providers such as ACVSMR@gmail.com; ACVSMR@comcast.net, and others.

39.     Copyrighted teaching materials, applications for ACVSMR students, applications for ACVSMR scholarships; and media presentation materials were created by Doctor Lyons beginning in 1996 that displayed the "ACVSMR" and or "The American College of Veterinary Sports Medicine and Rehabilitation™" signature program name.

40.     These copyrighted materials have been and continue to be offered for purchase and through educational programs with international distribution.  The ACVSMR Mark was discussed frequently with professionals, philanthropists; corporations, horsemen and others, and distinguished itself from other veterinary sports medicine and rehabilitation material by virtue of and with focused emphasis and foundation that ACVSMR programs strictly adhered to the standards and practices of the analogous human medical specialty fields.

41.    Doctor Lyons' doctorate and post-doctorate training and collaboration with experts in the related human medical specialties was a distinguishing feature to her proposed multi-faceted plan to not only develop the needed ACVSMR educational programs but to create change in the way veterinary sports medicine and rehabilitation is delivered to the animal sports industries and associations.   This distinction has proven to be the strength that has drawn owners of elite sport horses to support and or join the ACVSMR's vision.

Doctor Lyons Contacts The AVMA To Discuss ACVSMR

42.    In 1997 Doctor Lyons contacted the American Veterinary Medical Association ("AVMA") to discuss the process of seeking consideration for its approval of the educational and certification policies developed for, offered through, and adopted by The American College of Veterinary Sports Medicine and Rehabilitation, and as described by *The Equine Excellence Initiative©* and to seek endorsement by the AVMA of its educational structure, specialist certification process for veterinarians and licensing recommendations for new veterinary paraprofessionals.

43.    Doctor Lyons was referred to the AVMA's representative for American Board of Veterinary Specialty Board Development.  Doctor Lyons informed the AVMA representative that she anticipated the eventual establishment of two new separate and independent veterinary specialty boards or areas of specialization - Veterinary Sports Medicine; and Veterinary Physical Medicine and Rehabilitation as described in *The Equine Excellence Initiative* and other copyrighted materials developed by Doctor Lyons.

44.    Doctor Lyons informed the AVMA representative that her educational background, research, and veterinary clinical experience in equine sports medicine and equine physical medicine and rehabilitation led to the development of the ACVSMR's planned and existing programs to follow closely the standards set forth by the human medical specialty boards.

45.     Doctor Lyons informed the AVMA representative that the lack of specialized veterinary training programs in either field was the basis for the suggestion that the two distinct specialty areas be combined initially, since veterinary sports medicine could not be developed without veterinary physical medicine and rehabilitation, but that in time, the specialty field of veterinary physical medicine and rehabilitation could be a stand-alone specialty and further subdivide into distinct areas including internal medicine, oncology, musculoskeletal, sports medicine, genetics, endocrine, geriatrics, pharmacology, pain management, and other areas, as the human specialty in physical medicine and rehabilitation had done.

46.     Doctor Lyons informed the AVMA representative that she had already developed and copyrighted a detailed plan for post-doctoral education- to the level of detail which included the number of hours or number of clinical cases ACVSMR fellows or residents would be required to complete in order to meet the requirements of board eligibility, also, the criteria for examinations and other requirements for specialist credentialing were outlined, and that she had already been speaking to human schools of physical therapy about developing a new graduate program for veterinary physical therapists.

47.     Doctor Lyons further informed the AVMA representative about her meetings with other veterinary medical and physical therapy licensing boards to inquire about the separate licensing of veterinary physical therapists and informed the AVMA that Doctor Lyons' nonprofit organization, Homecoming Farm, Inc., had already formed to administer this plan.

48.     The AVMA representative informed Doctor Lyons that she would need to have at least 5 AVMA member veterinarians on an organizing committee to submit these proposed plans to the AVMA for consideration of the AVMA's endorsement as a new veterinary specialty board.

49.     The AVMA representative suggested that Doctor Lyons invite some academic members to her committee as the AVMA liked to see academic professionals on new board

committees. It was the policy of the AVMA that all species that could benefit from a specialty must be represented and included in the educational programs.

50.     Doctor Lyons informed the AVMA representative that she would do this, but was concerned since in equine practice, sports medicine and physical medicine and rehabilitation patient care typically needed to take place in the athletic training environment. It was not a specialty that could be restricted to academic institutions as the majority of patients that would be served by this specialty needed to have the ongoing benefit of these specialized clinical services in the training and competition environments.

51.     Likewise, education for all the ACVSMR programs would include the missing paraprofessionals - physical therapists, farriers and podiatrists, equine health care managers, veterinary sports medicine and rehabilitation and veterinary sports technicians and other assistants.

52.     These allied ACVSMR paraprofessionals would also need to receive the majority of their training in specialized sports medicine and rehabilitation centers that were on the grounds of equine training and competition venues.   Sports medicine and sports medicine related rehabilitation could only be offered in the training environment as its ideal application was proactive.

53.     Doctor Lyons explained to the AVMA representative that another aspect of the necessary structure for the continued scientific development of the emerging field of veterinary sports and rehabilitation medicine would require the collection of epidemiological data on many animals regarding common veterinary, training and management practices, injury type and rate, recovery status, diagnostic methodologies in practices, clinical pharmacology, clinical pathology, and performance data.

13

54.     Doctor Lyons was developing this ACVSMR veterinary database system using newly developed and dedicated proprietary software systems developed through her and other's financial investments and expertise.

55.     This international ACVSMR veterinary proprietary database system business was described under the ACVSMR educational project in the *Equine Excellence Initiative©* written by Doctor Lyons in 1996. It has been proposed for use to many racing jurisdictions and other sport horse regulators and associations, veterinarians, researchers, pharmaceutical companies, government agencies and others, in the years since its initial plan and is being prepared for licensing at this time.

<u>The AVMA Principles of Veterinary Medical Ethics</u>

56.     Veterinarians are members of a scholarly profession who have earned academic degrees from comprehensive universities and practice the profession of veterinary medicine in a variety of situations and circumstances.

57.     Exemplary professional conduct upholds the dignity of the veterinary profession and all veterinarians are expected to adhere to a progressive code of ethical conduct known as the Principles of Veterinary Medical Ethics.

58.     In recognition of this, the AVMA has established principles of veterinary medical ethics which all members of the AVMA are required to follow. According to the AVMA, the basis for these principles "is the Golden Rule" and "Veterinarians should accept this rule as a guide to their general conduct . . . and should conduct their professional and personal affairs in an ethical manner . . . and adopt the [AVMA] principles as a guide for their activities".

59.     The AVMA Principles of Veterinary Medical Ethics include due process and require veterinarians to be "honest, fair, courteous, considerate, and compassionate; veterinarians are required to follow acceptable professional procedures using current professional and scientific

14

knowledge and must not slander or injure the professional standing or reputation of other veterinarians in a false or misleading manner.

60.     The AVMA and the individual Defendants, who are all licensed to practice veterinary medicine and members of the AVMA, were required to follow the AVMA Principles of Veterinary Medical Ethics at all times and especially in the conduct of all their activities as an Organizing Committee sanctioned by the AVMA seeking approval of a new specialty board in the field of veterinary sports and rehabilitation medicine.

The Auburn University Statement of Ethical Principles

61.     As an employee of Auburn University College of Veterinary Medicine, Gillette was expected to also adhere to a code of ethical conduct principles promulgated by Auburn University.

62.     The Auburn University Statement of Ethical Principles provides in relevant part:

"In accordance with those virtues of Honesty and Truthfulness set forth in the Auburn Creed, I, as a student and fellow member of the Auburn family, do hereby pledge that all work is my own, achieved through personal merit and without any unauthorized aid.  In the promotion of integrity, and for the betterment of Auburn, I give honor to this, my oath and obligation."

The Meeting With Gillette

63.     In 1999 Doctor Lyons presented a clinical research paper at the International Symposium for Veterinary Sports Medicine and Rehabilitation in Corvallis, Oregon at the College of Veterinary Medicine at Oregon State University.  This paper on equine flexor tendinitis rehabilitation in race horses was based on research done by Doctor Lyons through Homecoming Farm, Inc., and the American College of Veterinary Sports Medicine and Rehabilitation.

64.     While at the symposium, Doctor Lyons introduced herself to Gillette who was speaking on the topic of canine sports medicine.  Doctor Lyons discussed her years of work to develop her ACVSMR educational programs in veterinary sports medicine and rehabilitation through physician specialist advisors and described to Gillette her background in human medicine

15

as well as her education, experience and research in the field equine sports medicine and rehabilitation.

65.    Doctor Lyons informed Gillette of her plan to seek the approval by the AVMA of the new veterinary specialty board in veterinary sports medicine and rehabilitation in the name of ACVSMR .

66.    Doctor Lyons informed Gillette that she had begun the formation of an Organizing Committee for ACVSMR, as required by the AVMA, and identified several veterinarians under consideration for membership including Doctor Janet Steiss, also of Auburn University.

67.    Gillette stated that he was eager to become involved and asked that Doctor Lyons not invite Doctor Janet Steiss.  Doctor Steiss, also of Auburn Veterinary College, was described by Gillette as "his nemesis" at his academic institution.

68.    Doctor Lyons explained to Doctor Gillette that while she would like to find the necessary committee members so that the ACVSMR education and credentialing procedures might gain AVMA recognition, she clearly stated that the project had already been fully developed and described in copyrighted materials Doctor Lyons had developed over ten years and through her collaboration with the ACVSMR's board of physician advisors, and that it would be necessary that Doctor Gillette agree with these plans before joining the Organizing Committee.

69.    Doctor Lyons informed Gillette that his participation with ACVSMR was conditioned upon his acceptance of her plan for creation of a new veterinary specialty board in sports and rehabilitative medicine and that there was no room for changing the substance of this well developed plan and made it clear that if Gillette did not agree with the full substance of Doctor Lyons' ACVSMR educational programs, he could and should form his own independent committee and produce his own proposal for the AVMA.

70.     Doctor Lyons explained that over the course of many years in the development of the ACVSMR educational programs for Homecoming Farm, Inc., assurances were made to individuals and foundations which had donated monies to assist in the development of ACVSMR and its research and educational initiatives, that ACVSMR would follow the same high standards for accreditation of specialists that human medicine employed.

71.     Doctor Lyons had not only the intention but the responsibility of following this educational project through in accordance with the standards that defined it and promised to grant-makers and others that had funded its development and existing educational programs that had begun prior to 1995.

72.     Gillette readily agreed and stated to Doctor Lyons that he could not believe the amount of work that had already been done by her in the development of ACVSMR and its research and educational initiatives and that he would be eager to join Doctor Lyons to begin to assist in the official formation of the Organizing Committee required by the AVMA and help gain its endorsement of the ACVSMR programs.

73.     Doctor Gillette stated that the structure for Doctor Lyons' educational programs would be ideal for use in other animal subspecialties of veterinary sports medicine and rehabilitation as well.

<u>Gillette Gains Access To The Copyrighted Work Product</u>

74.     On September 9, 1999, pursuant to their agreement, Doctor Lyons provided Gillette with her copyrighted work product which was strictly intended to be used as part of her plan to seek the approval by the AVMA of the new veterinary specialty board in veterinary sports medicine and rehabilitation in the name of ACVSMR,  The documents received by Gillette included:

1)  The Equine Excellence Initiative ©June 1996 [See, Exhibit A];

2) Homecoming Farm, Inc., The American College of Veterinary Sports Medicine and Rehabilitation- <u>Objectives and General Structure for Board Specialty Training and Certification</u> ©1999 [See, Exhibit B];

3) Sheila Lyons, DVM, The American College of Veterinary Sports Medicine and Rehabilitation; *A Project of Homecoming Farm, Inc.* © [See, Exhibit C];

4) The American College of Veterinary Sports Medicine and Rehabilitation. *Goals and Purpose*© [See, Exhibit D];

5) The American College of Veterinary Sports Medicine and Rehabilitation, ACVSMR Educational Programs, <u>Application for Internship</u> ©1997 [See, Exhibit E];

6) <u>Equine Sports Medicine, Y2K</u>, Sheila Lyons, DVM, Homecoming Farm, Inc., ACVSMR ©[See, Exhibit F]

75.     Doctor Lyons also provided Gillette with a detailed description outlining a multi-year fellowship or residency training program for ACVSMR. This copyrighted plan detailed the number of hours spent in focused areas of specialized diagnostics or therapeutics and or number of procedures a candidate would need to complete and document in order to satisfy ACVSMR's requirements to be considered board eligible. Didactic examinations in several subjects, clinical and research experience was also outlined, and partnerships were proposed and in place for ACVSMR candidates to take part in human specialty training programs nationwide, just as Doctor Lyons had herself done.

Formation Of The Organizing Committee

76.     In 2000, Gillette was invited by Doctor Lyons to be part of the formal Organizing Committee of ACVSMR. The purpose of the Organizing Committee was to develop a strategy to achieve the goal of having ACVSMR recognized as a veterinary specialty board. Doctor Lyons created the Organizing Committee as part of the continuing work of ACVSMR.

77.     Later, Doctor Lyons and Gillette both agreed that Doctor Hilary Clayton, an equine veterinary researcher employed by University of Michigan Veterinary School would be a good candidate for the next addition to the Organizing Committee.

78.     Doctor Lyons filled the position of equine sports medicine and rehabilitation clinician, educator and researcher and Doctor Clayton's academic and research focus area was equine sports medicine and anatomy.

79.     Doctor Lyons and Gillette met with Doctor Clayton at Michigan Veterinary College and discussed the educational and organizational plan developed by Doctor Lyons and her physician advisors. The three also discussed their ideas for additional committee members to fulfill the AVMA's required minimum committee. Doctors Robert Taylor, Linda Blythe and Nunamaker were chosen to fulfill the membership number requirement of the AVMA.

80.     Gillette asked Doctor Clayton and Doctor Lyons if he could be named as the chair of the Organizing Committee for the ACVSMR for the purpose of assisting his professional advancement at his academic institution, Auburn University School of Veterinary Medicine, stating that his association with ASVSMR and chairmanship of its Organizing Committee would bolster his career and professional standing significantly.

81.     On January 19, 2003, Doctors Gillette and Lyons drafted a letter of intent, required by the AVMA, to Doctor John Oliver, Chair, American Board of Veterinary Specialties, in order to propose the approval of a new board specialty to be recognized through the AVMA.

82.     The letter of intent was based upon Doctor Lyons' copyrighted work product. Doctor Gillette submitted this letter naming the members of the organizing committee.

### The Organizing Committee Meeting In Chicago

83.     On May 18, 2004, there was a meeting of the ACVSMR Organizing Committee in Chicago. Gillette and all organizing committee members were in attendance except Doctor Taylor.

84.     Doctor Lyons also provided the Committee with additional documents including proposed articles of incorporation and by-laws for The American College of Veterinary Sports Medicine and Rehabilitation.

85.     There was a discussion of the copyrighted material that had been previously developed by Doctor Lyons, who explained her work in human medicine and described the intention to follow the same structure as in the human clinical medicine specialties.

86.     Doctor Lyons reported the nature of the relationship of Homecoming Farm Inc., the nonprofit corporation's development of these copyrighted materials.

87.     The AVMA sent as their representative to this meeting, Doctor Jon Frederic Dee ("Dee") to represent the AVMA and its' "American Board of Veterinary Specialties" in order to advise and oversee the work of the Organizing Committee, and assure that the committee adhered to the AVMA's "American Board of Veterinary Specialties Policies and Procedures" as it developed the materials necessary to request acknowledgement of a newly recognized Board of Specialists under the AVMA.  Dee was a member of the AVMA's committee to oversee new veterinary specialty development.

88.     When Dee reviewed the copyrighted material that had been developed by Doctor Lyons for creation of a new specialty board in the name of ACVSMR, he commented that the committee was well ahead of where he would have expected.

89.     Dee was informed that Doctor Lyons was the creator of ACVSMR, that it was her idea to create a new specialty board in veterinary sports and rehabilitative medicine, was author of *The Equine Excellence Initiative©* and that she had created and copyrighted the documents he had reviewed.

90.     Doctor Lyons informed Dee that she had created ACVSMR as a product of Homecoming Farm, Inc.'s project to create educational programs and clinical and research programs nationwide.

91.     Doctor Lyons provided Dee, and all other members of the Organizing Committee, with copies of these copyrighted documents for their review.  Included in these materials was a copy of a letter sent by independent counsel to Doctor Lyons (Attorney Paul Feinberg), dated April 16, 2004, and which stated in part that:

> "The purpose of this letter is to confirm our engagement as counsel to Homecoming Farm, Inc. ("HFI")-to provide tax exempt organization matters, in particular the formation of a new charitable nonprofit corporation to be named "American College of Veterinary Sports Medicine and Rehabilitation" ("the College") and to provide certain information about our fees, billing and collection policies, and other terms that will govern our relationship.
>
> You have asked us, on behalf of HFI, to perform the following services or functions:
>
> 1.  Prepare and file corporate documents to organize the College as a nonprofit corporation under the law of Delaware or another appropriate state.
>
> 2.  Prepare and file with the Internal Revenue Service an application (Form 1023) for a determination that the College qualifies as Section 501(3)(3) organization classified as a public charity.
>
> 3.  Advise on tax and profit corporate law aspects of future program and administrative activities, including qualifying to do business in Alabama or such sate where the College's administrative offices will be located.

The Organizing Committee Meeting In Philadelphia

92.     On July 26, 2004, the Organizing Committee, met in Philadelphia in conjunction with the AVMA's annual scientific conference and business meetings, to discuss the formation of a new nonprofit organization in the name of ACVSMR, to discuss the educational programs proposed and developed by Doctor Lyons, and to discuss certification guidelines for creation of a new veterinary specialty board in rehabilitation and sport medicine as described in Doctor Lyons'

*Equine Excellence Initiative©.*  Doctor Lyons was present at this meeting as was Gillette and other members of the Organizing Committee.

<u>Gillette Forces Doctor Lyons Off The Organizing Committee</u>

93.     As the meeting was about to begin, Gillette, after meeting in secret with the members of the Organizing Committee, announced that Doctor Lyons would be barred from the meeting of the Organizing Committee and that she would be forced to permanently "recuse herself" from the Organizing Committee.

94.     Gillette stated that the reason for this decision was that he had been contacted by unnamed individuals who included a former client of Doctor Lyons and who had made unspecified allegations involving improper conduct by Doctor Lyons.

95.     Doctor Lyons insisted that Gillette specify the allegations and identify the source. Doctor Lyons insisted that the allegations, whatever they were, were false and that she wanted to be afforded an opportunity to heard on this issue, to know the exact nature of the claims made by these unidentified individuals, and to clear her name and defend her reputation.

96.     Gillette refused to reveal the nature of the allegations except to state that he and Doctor Nunamaker of The University of Pennsylvania Veterinary School had received "e-mails" from these unidentified persons.

97.     Doctor Lyons requested that she be permitted to see these e-mails and be given a fair opportunity to confront the evidence, consistent with the Principles of Veterinary Medical Ethics of AVMA and due process, since she had done nothing wrong.  Doctor Gillette, the committee members and Dee refused.

98.     Gillette also falsely accused Doctor Lyons of having held herself out as holding a PhD.  Doctor Lyons stated that this was not true and had never falsely held herself out as having a

Ph.D. degree and asked that Doctor Gillette substantiate his claim.  Once again, Gillette refused and would not permit Doctor Lyons an opportunity to be heard.

99.     Gillette ordered Doctor Lyons from the room and refused to permit Doctor Lyons an opportunity to be heard and to confront the false allegations made.

100.    When Doctor Lyons did not leave the room, and insisted that she wanted an opportunity to be heard, Doctor Taylor, another member of the Organizing Committee suggested that Doctor Lyons should recuse herself from the Organizing Committee without a specification of the allegations or an opportunity for a fair hearing whether the allegations were true or not, "for the good of the Committee".

101.    Doctor Lyons stated that she had founded the Committee and that there was no truth to Gillette's accusations and that she desired an opportunity to be heard fairly on this issue.

102.    Before being forced to leave the room, Doctor Lyons reminded Gillette and the other members of the Organizing Committee that *The Equine Excellence Initiative©*, the other copyrighted documents  provided to the Committee and ACVSMR™ were her creation and based upon her work product and that Gillette and the other members of the Committee were not authorized to make use of the ACVSMR Mark or her work product without the express permission of Doctor Lyons.

103.    Gillette strongly insisted that Doctor Lyons leave and waved his hand dismissively refusing to respond further and Doctor Lyons left the meeting room deeply embarrassed, humiliated and devastated.

104.    Dee, the AVMA liaison to the Organizing Committee was present when this took place and took no action to prevent Doctor Lyons' involuntary ouster from the meeting in violation of the AVMA Principles of Veterinary Medical Ethics.

23

105.    Doctor Lyons did not tender a letter of resignation, nor did she receive any notice whatsoever from Gillette, nor the AVMA, that she had been removed by his or any other authority from the Organizing Committee which she founded.

106.    Gillette never provided any substance for the allegations made and never permitted Doctor Lyons an opportunity to be heard all in violation of the Principles of Veterinary Medical Ethics of the AVMA.

107.    Gillette did not return the copyrighted work product provided by Doctor Lyons nor did he express his intention or seek Doctor Lyons' permission to continue to use the ACVSMR Mark and her work product, as he proceeded without Doctor Lyons' participation.

108.    Gillette, the Organizing Committee members and Dee were provided with copyrighted materials that clearly established that ACVSMR was the name for the educational project of Homecoming Farm, Inc., and the copyrighted property of Doctor Lyons since 1996.

109.    Doctor Lyons never stopped using the ACVSMR project name in Homecoming Farm, Inc.'s nonprofit development materials, fundraising appeals, educational programs, research, educational booklets, and course descriptions through the current date.

110.    Doctor Lyons' involuntary removal from the planning committee chaired by Gillette was improper and unethical, in violation of AVMA procedures and guidelines and contrary to law and in no way affected or changed Doctor Lyons' relationship to ACVSMR or her ownership of the Mark and her copyrighted work product.

## The False Accusations

111.    Subsequently, in August of 2011, Doctor Lyons would discover that Ellen Asack ("Asack") and Betsy Erickson ("Erickson"), the owners of two miniature ponies from Cape Cod who had contacted Doctor Lyons in 2004 to request that Doctor Lyons examine their ponies, were

the unidentified individuals who contacted Gillette and made false and defamatory accusations concerning Doctor Lyons.

112.    Asack has a criminal history and a habit of filing false and malicious claims and threatening to physically harm and ruin the personal and professional reputations of others. She had engaged in campaigns of harassment; threatened to slander others; and filed false complaints against her former veterinarian and others who had rendered services in connection with her horses. Asack was also no stranger to the courts and claimed more than once to have sustained a permanent head injury, which left her permanently disabled and affected her ability to reason and comprehend.

113.    Unbeknownst to Doctor Lyons, Asack and Erickson began a campaign of sending e-mail messages containing false, defamatory and hostile accusations about Doctor Lyons to numerous third-parties including clients, friends, professional colleagues and to government and law enforcement officials in the Internal Revenue Service, Office of the Massachusetts Department of Revenue, Office of the Massachusetts and New Hampshire attorneys general and the boards of registration in veterinary medicine in the states of Florida and Kentucky, and other third parties.

114.    These false and defamatory communications were designed to harm Doctor Lyons in her business and reputation and to harass her. The documents provided by Asack and Erickson to support these false allegations included 62 documents which were fabricated by Asack and Erickson "in a crude attempt, through cut and paste, to create a scenario, which would give the impression that the documents were archived, retrieved and printed verbatim as copies of previous electronic communications (e-mail)" from Doctor Lyons. In each and every case, Asack's allegations were investigated, found to be baseless and Doctor Lyons was fully exonerated of any wrongdoing.

115. Asack and Erickson also caused a false complaint to be filed against Doctor Lyons with the Board of Registration in Veterinary Medicine in Massachusetts (hereinafter "Board"). Rather than confront Doctor Lyons and face cross examination Asack and Erickson failed to appear and testify at an administrative hearing and the Board voluntarily dismissed all of the charges based upon Asack and Erickson's false complaint. After a hearing a Massachusetts Superior Court Judge also found that the accusations were baseless and false and not supported by any credible evidence.

116. In August of 2011, in the course of discovery in matter before the United States Patent and Trademark Office, Doctor Lyons learned for the first time that it was Asack and Erickson who had contacted Gillette and made false and defamatory accusations when Gillette was forced to disclose the existence of the e-mail communications from Asack and Erickson.

117. Doctor Lyons also learned that Gillette communicated these false and defamatory allegations to each member of the Organizing Committee and to the AVMA as if they were true.

118. Had Gillette revealed this information before and permitted Doctor Lyons an opportunity to be heard, Doctor Lyons could have defended herself and easily proven that the allegations were completely false.

119. Upon information and belief, Gillette knew or should have known that these allegations were false but nevertheless used these baseless allegations as a pretext for removing Doctor Lyons from the Organizing Committee and the theft of her ideas, trademark and copyrighted work product.

THE DEFENDANTS' WRONGFUL ACTS

120. For their own profit and advantage the Defendants are without authorization using the ACVSMR Mark and misappropriating copyrighted materials in which the Plaintiffs have invested heavily.

121.    In 2009, Gillette, without authorization or legal authority and without the knowledge or consent of Doctor Lyons, created a webpage which infringes on the ACVSMR Mark and claims it to be "The Official Website of ACVSMR" and which relies on the copyrighted content of the Plaintiffs' work product. [See, Exhibit G]

122.    In 2011, Gillette, without authorization of legal authority and without the knowledge or consent of Doctor Lyons, created a Facebook Page which infringes on the ACVSMR Mark. [See, Exhibit H]

123.    Defendants, Gillette and Board of Directors, without authorization or legal authority and without the knowledge or consent of Doctor Lyons, created a website which infringes on the ACVSMR Mark and copyrighted work product of Doctor Lyons. [See, Exhibit I]

124.    Defendant, AVMA, without authorization or legal authority also maintains a website which infringes on the ACVSMR Mark and which relies on the copyrighted content of the Plaintiffs' work product. [See, Exhibit J]

125.    Defendant, AVMA, without authorization or legal authority published an announcement concerning the provisional recognition of a new specialty organization in veterinary medicine called the American College of Veterinary Sports Medicine and Rehabilitation which infringes on the ACVSMR Mark and which relies on the copyrighted content of the Plaintiffs' work product. [See, Exhibit K]

126.    The domain names "ACVSMR.COM" and "ACVSMR.ORG" are registered and are and been the property of Homecoming Farm, Inc., since July, 2001.

127.    Defendants have made and continue to make their infringing websites available to countless users within the District, have misappropriated and infringed on Plaintiffs' trademark and copyrighted work product originating on computer servers located in the District, have promoted and continue to promote their infringing websites to countless persons within this District via the

internet and electronic social media and as a result have generated revenue, notoriety and other benefits therefrom.

128.   Defendants, without consent of the Plaintiffs, have used and are continuing to use the ACVSMR Mark and copyrighted content of the Plaintiffs' work product in commerce by actively marketing and holding themselves out to the public, to veterinarians and veterinary organizations, to the academic community, industry, government organizations and others and in connection with the publication and dissemination of information, in conducting educational seminars and other similar activities, the solicitation of donations, grants and other funding, the collection of fees and tuitions, the offering of applications to veterinarians in the name of ACVSMR, the setting of standards in the field of veterinary medicine in the name of ACVSMR, the maintenance of a website in the name of ACVSMR, the publishing of scientific materials in the name of ACVSMR, designating Diplomats in the name of ACVSMR, forming corporations and other organizations in the name of ACVSMR, and other unauthorized activities in the name of ACVSMR with which such intended use is likely to cause confusion, or to cause mistake, or to deceive. The aforementioned acts of the Defendants infringe the ACVSMR Mark in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

129.   On September 1, 2004, and at other times, Gillette made false statements, both orally and in writing, to the AVMA, "To Whom It May Concern" and others that Doctor Lyons had misrepresented her academic credentials to him and to the public.  Doctor Lyons first learned of these false statements when correspondence between Gillette and the AVMA and other documents were disclosed to her by Gillette on November 30, 2011.  Such statements were false and defamatory.

130.   On November 25, 2005, and at other times, Gillette made false statements, both orally and in writing, to the AVMA, and others that Doctor Lyons had engaged in improper

conduct and unauthorized fund raising activity. Doctor Lyons first learned of these false statements when correspondence between Gillette and the AVMA and other documents were disclosed to her by Gillette on November 30, 2011. Such statements were false and defamatory.

131. In May of 2010, the AVMA provisionally approved a new specialty board in the field of veterinary sports and rehabilitation medicine in the name of The American College of Veterinary Sports Medicine and Rehabilitation™ and has used and is continuing to use the ACVSMR Mark in commerce by actively marketing and holding itself out to the public, to veterinarians and veterinary organizations, to the academic community, industry, government organizations and others and in connection with the publication and dissemination of information, in conducting educational seminars and other similar activities, the solicitation of dues, donations, grants and other funding, the collection of fees and tuitions, the offering of applications to veterinarians in the name of ACVSMR, the setting of standards in the field of veterinary medicine in the name of ACVSMR, the use of the ACVSMR Mark on its website, the publishing of scientific materials in the name of ACVSMR, designating Diplomats in the name of ACVSMR, and numerous educational institutions, private businesses and practitioners of veterinary medicine have infringed on the ACVSMR Mark through advertising and other means with which such intended use is likely to cause confusion, or to cause mistake, or to deceive. The aforementioned acts of AVMA infringe the ACVSMR Mark in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

132. In 2010 the Auburn University College of Veterinary Medicine published an article in the "Auburn Veterinarian", Winter 2010, Volume XXXII Number 1, which infringes on the ACVSMR Mark, and which states that "[n]ow with the approval of the AVMA Executive Board, Auburn will be one of the only places in the world veterinarians can become board certified in veterinary sports medicine and rehabilitation".

133.    In 2010 Auburn University College of Veterinary Medicine hosted a symposium for the International Association of Veterinary Rehabilitation and Physical Therapy ("IAVRPT") and published a program and conducted a presentation offering an organizational update on ACVSMR as part of its official program which infringed on the ACVSMR Mark.

134.    In 2011 Oregon State University College of Veterinary Medicine published an article stating that "[t]wo of the first 27 "diplomats" of the newly formed American College of Veterinary Sports and Rehabilitation Medicine are faculty members at OSU where the national move to develop a program for animal rehabilitation was launched more than a decade ago" which infringed on the ACVSMR Mark.

135.    The Defendants have actively marketed, promoted and sold the ACVSMR Mark without authority such that it has acquired secondary meaning within the relevant market and amongst the academic, veterinary, industrial and governmental communities and the public.

136.    The aforementioned acts of the Defendants are knowing, willful, intentional, and in bad faith and have caused and are continuing to cause confusion, mistake, or deception as to the Defendants' association with the ACVSMR Mark.

137.    The aforementioned acts of the Defendants have caused, and are continuing to cause, great and irreparable harm to the plaintiff and monetary loss and unless permanently restrained by this Court said irreparable injury will continue.

<u>Gillette Requested To Cease And Desist</u>
<u>From All Unauthorized Use Of The ACVSMR Mark</u>

138.    In September of 2010, Doctor Lyons learned for the first time that Gillette was using the ACVSMR Mark without authorization and had misappropriated her idea and copyrighted work product to create a new specialty board in veterinary sports and rehabilitative medicine.

139.    On September 17, 2010, Doctor Lyons, Homecoming Farm, Inc. and ACVSMR™, requested that Gillette immediately cease and desist from any and all use of the ACVSMR Mark and withdraw, delete and/or cancel any use or reference to the ACVSMR Mark in any corporate name or logo, domain name, media, trademark applications or otherwise. Plaintiffs also requested that Gillette refrain in the future from making any use of the ACVSMR Mark without prior written authority from Doctor Lyons, whether individually or within any corporate name, trading name, trading style, media, domain name or otherwise.

140.    Gillette never responded to the Plaintiffs' request that he cease and desist from infringing upon the ACVSMR Mark and upon information and belief, continues to use the ACVSMR Mark without authority and without legal justification.

141.    The unauthorized and unlawful use of the Plaintiffs' Mark and infringement on the copyrighted work product belonging to the Plaintiffs by the Defendants has created confusion in the scientific, veterinary and philanthropic communities which has damaged Doctor Lyons and Homecoming Farm, Inc., and caused and is continuing to cause irreparable harm to the ACVSMR Mark.

Gillette's Unlawful Attempts To Misappropriate The ACVSMR Mark<br>And Continuing Infringement

142.    On or about April 25, 2011, following receipt of the written request that he cease and desist from all unauthorized use of the ACVSMR Mark, Gillette, without authorization or legal justification, caused a Petition for Cancellation to be filed with the Office of the United States Patent and Trademark Office, which is frivolous and without merit and not advanced in good faith.

143.    On or about June 2, 2011, following receipt of a written request that he cease and desist from all unauthorized use of the ACVSMR Mark, Gillette, without authorization or legal authority and without the knowledge or consent of Doctor Lyons, formed a corporation in the

31

State of Colorado using the trade name The American College of Veterinary Sports and Rehabilitation Medicine.

## DAMAGES

144.    The aforementioned acts of the Defendants have caused and continue to cause irreparable injury and harm and monetary loss to the Plaintiffs.

145.    The infringement of the ACVSMR Mark and the copyrighted content of the Plaintiffs' work product has caused confusion and has diluted the distinctiveness of the ACVSMR Mark by eroding the public's exclusive identification of the ACVSMR Mark with the Plaintiffs, tarnishing and degrading the positive associations and prestigious connotations of the ACVSMR Mark and otherwise diminishing the reputation and capacity of the ACVSMR Mark to identify and distinguish goods and services and has deprived the Plaintiffs of grants, funding, revenues and income.

146.    The infringing websites have diverted veterinarians, veterinary organizations, members of the academic community and veterinary industry, donors, clients and other members of the public who would otherwise use Plaintiffs' services.    This usurps clients, donors, academicians and others and has damaged the Plaintiffs' fund raising activities, business, good will, reputation and ability to attract clients, donors and investors.

147.    The misappropriation of Doctor Lyons' copyrighted work product and idea to create a new specialty board in veterinary sports and rehabilitative medicine has deprived Doctor Lyons of the opportunity to create a new specialty board in veterinary medicine, the professional advantages of board certification in the field of veterinary sports and rehabilitative medicine, the income and professional prestige associated with the founding of a new specialty board in veterinary medicine and the salary, benefits, bonuses, employment opportunities associated

therewith and a lifetime of work and professional accomplishment in the field of veterinary sports and rehabilitative medicine.

148.    The false and defamatory statements made by the Defendants concerning Doctor Lyons prejudiced the Plaintiff in her profession or business, or otherwise imputed an unfitness for or misconduct in her employment and held her up to public and professional ridicule and damaged her in her business and personal and professional reputation.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

(Federal Trademark Infringement)
(Violation of 15 U.S.C. § 1114(1))

149.    Plaintiffs repeat and incorporate by reference each and every allegation contained in preceding paragraphs of this Complaint.

150.    Defendants, without consent of the Plaintiffs, have used and will continue to use in commerce the ACVSMR trademark owned and registered by the plaintiff, Sheila Lyons, D.V.M., in actively marketing and holding themselves out to the public, to veterinarians and veterinary organizations, to the academic community, industry, government organizations and others and in connection with the publication and dissemination of information, in conducting educational seminars and other similar activities, the solicitation of donations, grants and other funding, the collection of fees and tuitions, the offering of applications to veterinarians in the name of ACVSMR, the setting of standards in the field of veterinary medicine in the name of ACVSMR, the maintenance of a website in the name of ACVSMR, the publishing of scientific materials in the name of ACVSMR, designating Diplomats in the name of ACVSMR, forming corporations and other organizations in the name of ACVSMR, and other unauthorized activities in the name of

ACVSMR with which such intended use is likely to cause confusion, or to cause mistake, or to deceive.

151. The aforementioned acts of the Defendants constitute trademark infringement in violation of Section 32(a) of the Lanham Act, 15 U.S.C. § 1114(1).

152. The aforementioned acts of the Defendants are knowing, willful, intentional, and in bad faith and have caused and are continuing to cause confusion, mistake, or deception as to the defendant's association with the ACVSMR Mark.

153. The aforementioned acts of the Defendants have caused, and are continuing to cause, great and irreparable harm to the Plaintiff and monetary loss and unless permanently restrained by this Court said irreparable injury will continue.

154. Accordingly, Plaintiffs are entitled to injunctive relief pursuant to 15 U.S.C. § 1116, damages pursuant to 15 U.S.C. § 1117(a), including Defendants' revenues and/or the Plaintiffs' actual damages as well as the costs of bringing this action. The Plaintiffs are further entitled to attorneys' fees and costs because of Defendants' conduct.

**SECOND CLAIM FOR RELIEF**

(Federal Trademark Infringement and Unfair Competition)
(Violation of 15 U.S.C. § 1125(a))

155. Plaintiffs repeat and incorporate by reference each and every allegation contained in preceding paragraphs of this Complaint.

156. Defendants, without consent of the Plaintiff, have used and will continue to use in commerce the ACVSMR trademark owned and registered by the plaintiff, Sheila Lyons, D.V.M., in actively marketing and holding themselves out to the public, to veterinarians and veterinary organizations, to the academic community, industry, government organizations and others and in connection with the publication and dissemination of information, in conducting educational

34

seminars and other similar activities, the solicitation of donations, grants and other funding, the collection of fees and tuitions, the offering of applications to veterinarians in the name of ACVSMR, the setting of standards in the field of veterinary medicine in the name of ACVSMR, the maintenance of a website in the name of ACVSMR, the publishing of scientific materials in the name of ACVSMR, designating Diplomats in the name of ACVSMR, forming corporations and other organizations in the name of ACVSMR, and other unauthorized activities in the name of ACVSMR with which such intended use is likely to cause confusion, or to cause mistake, or to deceive.

157.    The aforementioned acts of the Defendants infringe the ACVSMR Mark in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

158.    Defendants have actively marketed, promoted and sold the ACVSMR Mark without authority such that it has acquired secondary meaning within the relevant market and amongst the academic, veterinary, industrial and governmental communities and the public.

159.    The aforementioned acts of the Defendants are knowing, willful, intentional, and in bad faith and have caused and are continuing to cause confusion, mistake, or deception as to the defendant's association with the ACVSMR Mark.

160.    The aforementioned acts of the Defendants have caused, and are continuing to cause, great and irreparable harm to the Plaintiffs and monetary loss and unless permanently restrained by this Court said irreparable injury will continue.

161.    Accordingly, Plaintiffs are entitled to injunctive relief pursuant to 15 U.S.C. § 1116, damages pursuant to 15 U.S.C. § 1117(a), including Defendants' revenues and/or the Plaintiffs' actual damages as well as the costs of bringing this action. The Plaintiffs are further entitled to an award of attorneys' fees and the costs of bringing this action.

### THIRD CLAIM FOR RELIEF

#### (Common-Law Trademark Infringement)

162.    Plaintiffs repeat and incorporate by reference each and every allegation contained in preceding paragraphs of this Complaint.

163.    The aforementioned actions of the Defendants constitute trademark infringement in violation of common law.

164.    The aforementioned actions of the Defendants constitute use that is likely to cause confusion, to cause mistake or to deceive.

165.    The aforementioned acts of the Defendants are knowing, willful, intentional and in bad faith and have caused, and are continuing to cause, great and irreparable harm to the Plaintiffs and monetary loss and unless permanently restrained by this Court said irreparable injury will continue.

166.    Accordingly, Plaintiffs are entitled to injunctive relief and damages, including Defendants' revenues and/or the Plaintiffs' actual damages as well as the costs of bringing this action. The Plaintiffs are further entitled to an award of punitive damages as well as attorneys' fees and the costs of bringing this action.

### FOURTH CLAIM FOR RELIEF

#### (Federal Trademark Dilution)
#### (Violation of 15 U.S.C. § 1125(c))

167.    Plaintiffs repeat and incorporate by reference each and every allegation contained in preceding paragraphs of this Complaint.

168.    Plaintiffs have extensively and continuously promoted and used the ACVSMR Mark by conducting scientific research and educational seminars, conferences and workshops, creating internships and externships and have solicited and obtained grant support for veterinary

sports medicine and rehabilitation in the name of ACVSMR and continue to do so and the ACVSMR Mark has become well known and has a national and international reputation and has established certain standards in veterinary sports medicine and veterinary rehabilitation medicine, research and education which are unique and well recognized within the academic, veterinary, industry and governmental communities and to the public.

169. The aforementioned acts of the Defendants constitute an infringement of the ACVSMR Mark that dilutes and is likely to dilute the distinctiveness of the ACVSMR Mark by eroding the public's exclusive identification of the ACVSMR Mark with the Plaintiffs, tarnishing and degrading the positive associations and prestigious connotations of the ACVSMR Mark and otherwise diminishing the reputation and capacity of the ACVSMR Mark to identify and distinguish goods and services.

170. The aforementioned actions of the Defendants demonstrate an intentional, conscious, willful and malicious intent to trade on the goodwill associated with the ACVSR Mark and a lifetime of scientific work in the field of veterinary sports and rehabilitation medicine by Doctor Lyons in creating it and/or to cause dilution of the ACVSMR Mark, to the great and irreparable injury of the Plaintiffs.

171. The aforementioned actions of the Defendants have caused and will continue to cause irreparable injury to Plaintiffs' goodwill and professional reputation, the dilution of the distinctiveness and value of the well known and distinctive ACVSMR Mark in violation of 15 U.S.C. § 1125(c), and Plaintiffs are, therefore, entitled to injunctive relief and to Defendants' revenues, actual damages, enhanced revenues and damages as well as an award of reasonable attorneys' fees and the costs of bringing this action pursuant to 15 U.S.C. §§ 1125(c), 1116, and 1117.

### FIFTH CLAIM FOR RELIEF

#### (State Trademark Dilution and Injury to Business reputation)

172.    Plaintiffs repeat and incorporate by reference each and every allegation contained in preceding paragraphs of this Complaint.

173.    Plaintiffs have extensively and continuously promoted and used the ACVSMR Mark by conducting scientific research and educational seminars, conferences and workshops, creating internships and externships and have solicited and obtained grant support for veterinary sports medicine and rehabilitation in the name of ACVSMR and continue to do so and the ACVSMR Mark has become well known and has a national and international reputation and has established certain standards in veterinary sports medicine and veterinary rehabilitation medicine, research and education which are unique and well recognized within the academic, veterinary, industry and governmental communities and to the public.

174.    The aforementioned acts of the Defendants constitute an infringement of the ACVSMR Mark that dilutes and is likely to dilute the distinctiveness of the ACVSMR Mark by eroding the public's exclusive identification of the ACVSMR Mark with the Plaintiffs, tarnishing and degrading the positive associations and prestigious connotations of the ACVSMR Mark and otherwise diminishing the reputation and capacity of the ACVSMR Mark to identify and distinguish goods and services.

175.    The aforementioned actions of the Defendants have caused and will continue to cause irreparable injury to Plaintiffs' goodwill and professional reputation, the dilution of the distinctiveness and value of the well known and distinctive ACVSMR Mark in violation of the antidilution laws, whether codified by statute or developed in common law, of all states.

176.    Plaintiffs are, therefore, entitled to injunctive relief, damages and costs, as well as, if appropriate, enhanced damages and an award of reasonable attorneys' fees and the costs of bringing this action.

### SIXTH CLAIM FOR RELIEF

(Federal Copyright Infringement)
(Violation of 17 U.S.C. § 106 et. seq.)

177.    Plaintiffs repeat and incorporate by reference each and every allegation contained in preceding paragraphs of this Complaint.

178.    Defendants, without the consent of the Plaintiffs, have used and will continue to infringe on the copyrighted work product of the Plaintiffs through its unauthorized copying, distribution, and utilization of the research, teaching and model created by the Plaintiffs for post doctoral specialty training and certification and other work product associated with the ACVSMR Mark and by making an application to the AVMA for recognition of a new veterinary specialty board based upon that copyrighted work product in violation of the Copyright Act 17 U.S.C. § 106.

179.    The aforementioned acts of the Defendants constitute copyright infringement in violation of the Copyright Act 17 U.S.C. § 106 et. seq.

180.    The aforementioned acts of the Defendants have caused, and are continuing to cause, great and irreparable harm to the Plaintiff and monetary loss and unless permanently restrained by this Court said irreparable injury will continue.

181.    Accordingly, Plaintiffs are entitled to injunctive relief pursuant to the Copyright Act 17 U.S.C. § 502(a), damages pursuant to the Copyright Act 17 U.S.C. § 504 (a)-(c), including Defendants' revenues and/or the Plaintiffs' actual damages and any additional profits of the

infringer, statutory damages as well as the costs of bringing this action. The Plaintiffs are further entitled to attorneys' fees and costs because of Defendants' conduct.

## SEVENTH CLAIM FOR RELIEF

### (Common Law Copyright Infringement)

182.    Plaintiffs repeat and incorporate by reference each and every allegation contained in preceding paragraphs of this Complaint.

183.    Defendants, without the consent of the Plaintiffs, have used and will continue to infringe on the copyrighted work product of the Plaintiffs through its unauthorized copying, distribution, and utilization of the research, teaching and model created by the Plaintiffs for post doctoral specialty training and certification and other work product associated with the ACVSMR Mark and by making an application to the AVMA for recognition of a new veterinary specialty board based upon that copyrighted work product.

184.    The aforementioned acts of the Defendants constitute copyright infringement in violation of common law.

185.    The aforementioned acts of the Defendants have caused, and are continuing to cause, great and irreparable harm to the Plaintiff and monetary loss and unless permanently restrained by this Court said irreparable injury will continue.

186.    Accordingly, Plaintiffs are entitled to injunctive relief and damages pursuant to common law, including Defendants' revenues and/or the Plaintiffs' actual damages and any additional profits of the infringer, statutory damages as well as the costs of bringing this action. The Plaintiffs are further entitled to attorneys' fees and costs because of Defendants' conduct.

## EIGHTH CLAIM FOR RELIEF

### (Common-Law Unfair Competition)

187.    Plaintiffs repeat and incorporate by reference each and every allegation contained in preceding paragraphs of this Complaint.

188.    The aforementioned actions of the Defendants constitute use that is likely to cause confusion, to cause mistake or to deceive.

189.    The aforementioned acts of the Defendants are knowing, conscious, willful, intentional and in bad faith and are causing and continuing to cause confusion, mistake or deception as to the Defendants' association with the ACVSMR Mark and constitute unfair competition in violation of the common law.

190.    The aforementioned acts of the Defendants have caused, and are continuing to cause, great and irreparable harm and monetary loss to the Plaintiffs and unless permanently restrained by this Court said irreparable injury will continue.

191.    Plaintiffs are, therefore, entitled to injunctive relief, damages and costs, as well as, if appropriate, enhanced damages and an award of reasonable attorneys' fees and the costs of bringing this action.

### NINTH CLAIM FOR RELIEF

#### (Misappropriation of Intellectual Property)

192.    Plaintiffs repeat and incorporate by reference each and every allegation contained in preceding paragraphs of this Complaint.

193.    Doctor Lyons was the creator of ACVSMR as a product of Homecoming Farm, Inc.'s project to create educational programs and clinical and research programs nationwide, she was the author of *The Equine Excellence Initiative* and it was her idea to create a new specialty board in veterinary sports and rehabilitative medicine.

194.    Doctor Lyons disclosed her idea and plan to create a new specialty board in veterinary sports and rehabilitative medicine and work product to the Defendants on the condition that that ACVSMR Mark, which she had used in commerce since 1996 and which would remain the property of Doctor Lyons and Homecoming Farm, Inc., and that the Defendants were required to follow detailed plans she had developed for the formation of a new veterinary specialty board in sports and rehabilitative medicine consistent with the principles set forth in *The Equine Excellence Initiative* that would follow the very high standards for accreditation of specialists human medicine employed.

195.    Doctor Lyons disclosed her work under circumstances under which it was was clear to the Defendants that they voluntarily accepted the disclosure knowing the conditions on which it was tendered and the reasonable value of the work.

196.    The Defendants breached their agreement with Doctor Lyons and have misappropriated her ideas and work product.

197.    The aforementioned actions of the Defendants have caused and will continue to cause irreparable injury to Plaintiffs' goodwill and professional reputation, the dilution of the distinctiveness and value of the well known and distinctive ACVSMR Mark.

198.    Plaintiffs are, therefore, entitled to injunctive relief, damages and costs, as well as, if appropriate, enhanced damages and an award of reasonable attorneys' fees and the costs of bringing this action.

## TENTH CLAIM FOR RELIEF

### (State Unfair and Deceptive Business Practices)
### (Violation of M.G.L. Chapter 93A)

199.    Plaintiffs repeat and incorporate by reference each and every allegation contained in preceding paragraphs of this Complaint.

42

200.    The aforementioned actions of the Defendants constitute false and misleading acts and practices within the meaning of M.G.L., Chapter 93A.

201.    The aforementioned actions of the Defendants were and continue to be knowing, conscious, willful, intentional and in bad faith.

202.    The aforementioned acts of the Defendants have caused, and are continuing to cause, great and irreparable harm and monetary loss to the Plaintiffs and unless permanently restrained by this Court said irreparable injury will continue.

203.    Plaintiffs are, therefore, entitled to injunctive relief, damages and costs, as well as, if appropriate, treble damages and an award of reasonable attorneys' fees and the costs of bringing this action pursuant to M.G.L. Chapter 93A.

### ELEVENTH CLAIM FOR RELIEF

#### (Libel and Slander)

204.    Plaintiffs repeat and incorporate by reference each and every allegation contained in preceding paragraphs of this Complaint.

205.    Defendant, Gillette, uttered words in oral and/or written form of and concerning Doctor Lyons that were such as would hold the Plaintiff up to contempt, hatred, scorn, or ridicule or would tend to impair Plaintiff's standing in the community.

206.    The Defendant's oral and/or written words of and concerning the Plaintiff were such as would tend to discredit the Plaintiff in the minds of any considerable and respectable class in the community.

207.    The Defendant's oral and/or written statements were made public by the Defendant's actions.

208.    The oral and/or written statements made by the Defendant were false or were otherwise made with malice.

43

209.    The Defendant's oral and/or written words of and concerning the Plaintiff prejudiced the Plaintiff in her profession or business, or otherwise imputed an unfitness for or misconduct in her employment and held her up to public and professional ridicule and damaged her in her business and reputation..

210.    As a direct and proximate result of the Defendant's conduct as heretofore alleged, the Plaintiff has suffered damage, both special, as heretofore alleged, and general, including substantial expenses and other incidental and consequential damages.

### TWELFTH CLAIM FOR RELIEF

### (Loss of Business Opportunity)

211.    Plaintiffs repeat and incorporate by reference each and every allegation contained in preceding paragraphs of this Complaint.

212.    The aforementioned act of the Defendants caused the Plaintiffs a loss of chance and business opportunities and prospects as well and income, grants, funding and revenues from public, private, philanthropic, veterinary, academic, industry and governmental clients and organizations by eroding the public's exclusive identification of the ACVSMR Mark with the Plaintiffs, tarnishing and degrading the positive associations and prestigious connotations of the ACVSMR Mark and otherwise diminishing the reputation and capacity of the ACVSMR Mark to identify and distinguish goods and services and by prejudicing the Plaintiff in her profession or business, or otherwise imputing an unfitness for or misconduct in her employment and holding her up to public and professional ridicule.

213.    As a direct and proximate result of the Defendant's conduct as heretofore alleged, the Plaintiff has suffered damage, both special, as heretofore alleged, and general, including substantial expenses and other incidental and consequential damages.

## THIRTEENTH CLAIM FOR RELIEF

### (Intentional Infliction of Emotional Distress)

214.    Plaintiffs repeat and incorporate by reference each and every allegation contained in preceding paragraphs of this Complaint.

215.    Defendants in the actions as heretofore alleged, knew or should have known that severe or extreme emotional distress to Doctor Lyons was the likely result of his conduct.

216.    The Defendants' conduct was extreme and outrageous, was beyond all bounds of decency and was utterly intolerable in a civilized community.

217.    The Defendants' actions caused Doctor Lyons extreme emotional distress.

218.    The emotional distress sustained by the Doctor Lyons was severe and of a nature that no reasonable person could be expected to endure it.

219.    As a direct and proximate result of the Defendant's conduct as heretofore alleged, Doctor Lyons has sustained severe and permanent personal injuries, suffered great pain of body and anguish of mind, incurred substantial expenses and has suffered other incidental and consequential damages.

## FOURTEENTH CLAIM FOR RELIEF

### Interference with Advantageous Business Relations

220.    Plaintiffs repeat and incorporate by reference each and every allegation contained in preceding paragraphs of this Complaint.

221.    Defendants' intentional and willful actions, as heretofore alleged, were calculated to cause damage to the Plaintiff in her lawful business.

222.    The Defendants' actions were done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the Defendant, thus constituting malice.

223.    As a direct and proximate result of the Defendants' conduct as heretofore alleged, the Plaintiffs have sustained substantial loss of income, serious economic harm and incurred additional costs, damage to reputation in the business community and other incidental and consequential damages.

PRAYER FOR DAMAGES AND OTHER EQUITABLE RELIEF

WHEREFORE, Plaintiffs prays as follows:

1.    Defendants and all of their agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from any of the defendants, or in concert or participation with any of the defendants, and each of them, be enjoined permanently, from: using, copying, reproducing, or imitating the ACVSMR Mark or any confusingly similar or colorable imitation thereof or the copyrighted content of the Plaintiffs' work product and that all infringing materials, electronic or otherwise, in possession of the defendants be delivered up and destroyed pursuant to 15 U.S.C. § 1125, 17 U.S.C. § 502 and all other state and federal law.

2.    Defendants and all of their agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from the defendants, or in concert or participation with any of the defendants, and each of them, be enjoined permanently, from:

a.    using the ACVSMR Mark, or any copy, reproduction, or colorable imitation or simulation of the ACVSMR Mark or the copyrighted content of the Plaintiffs' work product in connection with defendants activities including but not limited to any and all marketing or holding out to the public, to veterinarians and veterinary organizations, to the academic community, industry, government organizations and others;

46

b.  using the ACVSMR Mark, or any copy, reproduction, or colorable imitation or simulation of the ACVSMR Mark or the copyrighted content of the Plaintiffs' work product in connection with the publication and dissemination of information, in conducting educational seminars and other similar activities;

c.  using the ACVSMR Mark, or any copy, reproduction, or colorable imitation or simulation of the ACVSMR Mark or the copyrighted content of the Plaintiffs' work product in connection with the solicitation of donations, grants and other fund raising activities or in the collection of fees and tuitions;

d.  using the ACVSMR Mark, or any copy, reproduction, or colorable imitation or simulation of the ACVSMR Mark or the copyrighted content of the Plaintiffs' work product in the offering of applications to veterinarians in the name of ACVSMR;

e.  using the ACVSMR Mark, or any copy, reproduction, or colorable imitation or simulation of the ACVSMR Mark or the copyrighted content of the Plaintiffs' work product in the setting of standards in the field of veterinary medicine in the name of ACVSMR;

f.  using the ACVSMR Mark, or any copy, reproduction, or colorable imitation or simulation of the ACVSMR Mark or the copyrighted content of the Plaintiffs' work product in the maintenance of any website in the name of ACVSMR;

g.  using the ACVSMR Mark, or any copy, reproduction, or colorable imitation or simulation of the ACVSMR Mark or the copyrighted content of the Plaintiffs' work product in the publishing of any scientific or research materials in the name of ACVSMR;

h.   using the ACVSMR Mark, or any copy, reproduction, or colorable imitation or simulation of the ACVSMR Mark or the copyrighted content of the Plaintiffs' work product in designating Diplomats in the name of ACVSMR;

i.   using the ACVSMR Mark, or any copy, reproduction, or colorable imitation or simulation of the ACVSMR Mark or the copyrighted content of the Plaintiffs' work product in the formation of any corporations and other organizations in the name of ACVSMR;

j.   using any trademark or trade name, identifier, designation or design of any kind or the copyrighted content of the Plaintiffs' work product that is likely to cause confusion, mistake, deception or public misunderstanding that such activities are carried on or provided by ACVSMR, or are sponsored by ACVSMR, or are in any way related to ACVSMR;

k.   using any trademark or trade name, identifier, designation or design of any kind or the copyrighted content of the Plaintiffs' work product on or in connection with the defendants' activities that dilutes or is likely to dilute the distinctiveness, good will or reputation of the ACVSMR Mark;

l.   passing off, palming off, or assisting in passing off or palming off any activities of the Defendants as those of ACVSMR, or otherwise free riding or benefiting from the copyrighted content of the Plaintiffs' work product or continuing any and all acts of unfair or deceptive competition as alleged in this Complaint;

m.   or, any other unauthorized activities in the name of ACVSMR or use of the copyrighted content of the Plaintiffs' work product where such use is likely to diminish the value of the Plaintiffs' trademark or copyrighted work product, or to cause confusion, or to cause mistake, or to deceive.

3.      Defendants be compelled to account for and turn over to the Plaintiffs any and all revenues, gains, profits, benefits or advantages of any kind derived by the Defendants, directly or indirectly, from any source whatsoever using the ACVSMR Mark or work product belonging to the Plaintiffs including, but not limited to any and all donations, grants, fees, tuitions, dues or payments of any kind;

4.      Defendants be compelled to account for and turn over to the Plaintiffs any and all revenues, gains, profits, benefits or advantages of any kind derived by the Defendants, directly or indirectly, as a result of making any false or misleading statements and engaging in any acts of unfair competition in violation of M.G.L., Chapter 93A, as well as such revenues, gains, profits, benefits or advantages available under federal, state and common law;

5.      That Plaintiffs be awarded all damages caused by the acts forming the basis of this Complaint including, trademark and copyright infringement and unfair competition and unfair and deceptive business practices, economic harm, damage to the Plaintiffs' business and personal and professional reputation; emotional distress, loss of business opportunity, interference with advantageous business relations and libel and slander.

6.      That based upon the Defendants' knowing and intentional use of the ACVSMR Mark without legal authority or justification and for continuing to make use of the mark after being requested to cease and desist from all such unauthorized activities, the damages be trebled and the award be enhanced as provided in 15 U.S.C. § 1117(a), 17 U.S.C. § 504(d) as well as M.G.L., Chapter 93A;

7.      That Defendants be required to pay the Plaintiffs the costs and reasonable attorneys' fees that she has and will incur in this action pursuant to 15 U.S.C. § 1117(a), 17 U.S.C. § 505 as well as M.G.L., Chapter 93A;

8.    Based upon the Defendants' willful and deliberate infringement and dilution of the ACVSMR Mark and to deter such conduct in the future, Plaintiffs be awarded punitive damages;

9.    That this Court grant and award such other relief as is proper and just.

## DEMAND FOR TRIAL BY JURY

The Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,
The Plaintiffs,
By her attorneys:

Stephen Lyons /s/

_____

Stephen J. Lyons (BBO #309840)
KLIEMAN & LYONS
Two Oliver Street
Suite 617
Boston, MA  02109
Telephone:  617-443-1000
sjlyons@kliemanlyons.com


Camille Sarrouf /s/

_____

Camille F. Sarrouf (BBO #442440)
SARROUF LAW, LLP
Two Oliver Street
Suite 617
Boston, MA 02109
Telephone: (617) 227-5800
cfs@sarrouflaw.com

Dated: December 12, 2011