UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————— )
                                             )
SHEILA LYONS, and HOMECOMING    )
FARM, INC.                                  )
                                             )
                                             )
                    Plaintiffs, )
                                             )
          v.                             )        CIVIL ACTION
                                             )        NO. 11-12192-WGY
ROBERT GILLETTE, LINDA BLYTHE,   )
HILARY CLAYTON, JAMES COOK,       )
CHRISTINE ZINK, JOSEPH WAKSHLAG )
ANDRIS KANEPS, WAYNE McILWRAITH )
KEVIN HAUSSLER, THE BOARD OF     )
DIRECTORS OF THE AMERICAN        )
COLLEGE OF VETERINARY SPORTS     )
MEDICINE AND REHABILITATION,     )
INC., and AMERICAN               )
VETERINARY MEDICAL ASSOCIATION,  )
INC.                                        )
                                             )
                    Defendants. )
———————————————————— )


MEMORANDUM AND ORDER


YOUNG, D.J.                                          July 31, 2012


I.   INTRODUCTION

     The plaintiffs Sheila Lyons ("Lyons") and Homecoming Farm,

Inc. ("Homecoming Farm") claim infringement of their trademark

and copyrighted work.  Lyons and Homecoming Farm also have

brought additional claims, including Chapter 93A violations,

misappropriation of "intellectual property," loss of business opportunity, and tortious interference.

Lyons and the defendant Robert Gillette ("Gillette") served as members of an organization committee of veterinarians (the "Committee") who sought to incorporate The American College of Veterinary Sports Medicine and Rehabilitation (the "College"). The purpose of the College was to teach a new veterinary specialty recognized by The American Veterinary Medical Association, Inc. (the "Association"), an organization based in Illinois that certifies veterinary specialties.  The relationship between Lyons and the Committee went sour in 2004.  Lyons was asked to recuse herself from the Committee, after allegations of Lyons improperly collecting moneys and failing to present her credentials.  Lyons maintains that these accusations are defamatory.

In reaction to these events, on May 24, 2005, Lyons filed a trademark application as owner of the marks "American College of Veterinary Sports Medicine and Rehabilitation" and "ACVSMR."  The complaint alleges that in the accreditation process before the Association, the College used the material authored by Lyons without her permission, thus infringing her copyrights.

A.   **Procedural Posture**

Lyons and Homecoming Farm filed a fourteen count complaint on December 12, 2011.  Civil Compl. Damages Equitable Relief

Demand Trial Jury ("Compl."), ECF No. 1.  The Association filed a motion to dismiss all counts of the complaint on February 9, 2012, Def. Am. Veterinary Med. Ass'n's Mot. Dismiss, ECF No. 8, supported by a memorandum, Mem. Reasons Supp. Am. Veterinary Med. Ass'n's Mot. Dismiss ("Association's Mem."), ECF No. 9.  On February 10, 2012, the College and its individual directors filed a partial motion to dismiss along with corresponding memorandum. Specifically, they allege this is a trademark claim and they seek dismissal of Counts VI, VII, IX, X, XI, XII, XIII, and XIV as to all defendants and dismissal of all claims as to the individual directors.  Partial Mot. Dismiss Am. Coll. Veterinary Sports Med. Rehab. Individual Dirs. (College's Mot."), ECF No. 10; Mem. Supp. Partial Mot. Dismiss  Am. Coll. Veterinary Sports Med. Rehab. Individual Dirs. ("College's Mem."), ECF No. 11.

Lyons and Homecoming Farm opposed both motions.  On February 23, 2012, Lyons and Homecoming Farm opposed the Association's Motion.  Mem Opp'n Def. Am. Veterinary Med. Ass'n's Mot. Dismiss ("Lyons' Opp'n to Association"), ECF No. 12.  On February 24, 2012, Lyons and Homecoming Farm opposed to the College's Motion. Mem. Opp'n Partial Mot. Dismiss Def. Am. Coll. Veterinary Sports Med. Rehab. & Individual Defs. ("Lyons' Opp'n to College"), ECF No. 13.  The replies from both the College and the Association followed on March 1 and 2, 2012.  Reply Br. Supp. Am. Veterinary Med. Ass'n's Mot. Dismiss ("Association's Reply"), ECF No. 15;

Reply Mem. Supp. Partial Mot. Dismiss Am. Coll. Veterinary Sports
Med. Rehab. & Individual Dirs. ("College's Reply"), ECF No. 16.

On March 19, 2012, Lyons and Homecoming Farm filed a motion
to amend the complaint.  Mot. Amend Compl. Assert Add'l Claims
Relief Breach Contract Abuse Process Based Facts Already Pled
Compl., ECF No. 17.  The Court denied the motion to amend as
futile on March 26, 2012.  Elec. Order, Mar. 26, 2012.  During a
motion hearing held on April 10, 2012, this Court ruled from the
bench dismissing Counts XI, XIII, and all Counts against the
individual Directors.  Clerk's Notes, Apr. 10, 2012.

B.  **Factual Allegations**

Lyons is a veterinarian and founder of Homecoming Farms,
Inc., a New Hampshire corporation with its principal place of
business in Brockton, Massachusetts.  Compl. ¶¶ 2-3, 18.  Lyons
sought the creation of a new post-doctoral institution for
veterinarians under the name of "The American College of
Veterinary Sports Medicine and Rehabilitation."  Id. ¶¶ 42-46,
63-66.  The College would create a new veterinary specialty
pertaining to the treatment of horses and dogs involved in racing
and other sports.  Id. ¶ 26.  To teach this specialty, the
College first needed to obtain recognition by the Association, a
not-for-profit association of veterinarians incorporated in
Illinois.  Id. ¶¶ 5, 48.  Lyons first contacted the Association
in 1997 to discuss the process of approval.  Id. ¶ 42.  Lyons

4

alleges that she authored and copyrighted a detailed plan and educational materials for the post-doctoral specialty in order to meet the Association's eligibility requirements.  Id. ¶ 46.  As required by the Association, Lyons invited five veterinarians to be part of a Committee in order to submit the application for the College's approval.  Id. ¶¶ 48-49.

In 1999, Lyons and Gillette had first discussed the specialty while at a conference in Oregon.  Id. ¶¶ 63-64, 66-67. Lyons alleges that she described the copyrighted materials and informed Gillette that his participation on the Committee was conditioned upon his acceptance of her plan for the specialty. Id. ¶¶ 68-69.  On September 9, 1999, Lyons provided Gillette with her copyrighted work.  Id. ¶ 74.  On July 2001, Lyons registered the domain names ACVSMR.org and ACVSMR.com, which are the property of Homecoming Farm.  Id. ¶¶ 38, 126.

In 2000, Lyons invited Gillette to be part of the Committee. Id. ¶ 76.  Then, on January 19, 2003, the Committee wrote a formal request to the Association for the approval of the specialty.  Id. ¶ 81.  The request to the Association was based on Lyons' copyrighted materials.  Id. ¶ 82.  On May 18, 2004, the Committee met in Chicago, where Lyons provided the College's proposed articles of incorporation, by-laws, and copies of other copyrighted materials.  Id. ¶¶ 83-84, 91.

On July 26, 2004, the members of the Committee, including Lyons and Gillette, attended an Association meeting in Philadelphia, where the formation of the College and the specialty was to be discussed.  Id. ¶ 92.  Prior to the meeting, Gillette had been informed of complaints against Lyons, apparently by former clients of hers.  Id. ¶¶ 93-98.  Gillette confronted Lyons about two things: first, her lack of credentials, allegedly Lyons held herself out as having a Ph.D. when in fact she did not have one; and second, "allegations involving improper conduct" made by former clients of Lyons.  Id. Gillette refused to reveal the nature of the second allegation, including the names of the former clients.  Id. ¶ 96.  Lyons was asked to recuse herself from the Committee.  Id. ¶ 100.  Lyons protested that the accusations were defamatory, that she had founded the Committee and could not be recused without first being heard, and finally that the Committee was in possession of her intellectual property.  Id. ¶¶ 100-02.  Lyons alleges that as of the meeting on July 26, 2004, the Committee was not authorized to use the "ACVSMR" mark or her work product without her express permission.  Id. ¶ 102.

A representative of the Association, Jon Frederick Dee ("Dee"), was present during the July 26, 2004 meeting when Lyons warned the Committee about the unauthorized use of her work.  Id. ¶ 104.  Prior to the July 26, 2004 meeting, Dee had copies and

6

was aware of the content of the copyrighted work authored by Lyons.  Id. ¶¶ 88-91.  The Committee, however, continued using Lyons' trademark and work product to apply for the approval of the specialty without her authorization.  Id. ¶ 128.  On September 1, 2004, and on November 25, 2005, Gillette sent two letters to the Association explaining the relationship between the College and Lyons, and the reasons for her recusal.  Id. ¶¶ 129-30.  Lyons alleges that it was only on November 30, 2011 that she learned about Gillette's letters.[1]  Id. ¶ 129.  The letters state that Lyons was receiving donations in the name of the College, for which she did not account to the Committee.  Id. ¶ 130.

On May 24, 2005, Lyons filed a trademark application for the marks "The American College of Veterinary Sports Medicine and Rehabilitation" and "ACVSMR," which were registered on May 2, 2006.  Id. ¶ 16.  Lyons alleges that she registered the copyrights over her research, education materials, and work associated with the ACVSMR mark.  Id. ¶ 19.

In 2009, the Committee created a website and a Facebook page using the ACVSMR mark and Lyons' work product without her

---

[1] The date of the trademark cancellation action and Lyons' first knowledge of the letters is quite contradictory.  See Compl. ¶ 116 (learning on August 2011 the content of the letters); id. ¶ 129 (learning on November 30, 2011 the content of the letters); Lyons' Opp'n to College 11 ("Lyons did not learn of Gillette's defamatory correspondence until on or after September of 2010" in the context of a trademark cancellation action).

authorization or knowledge.  Id. ¶¶ 121-23.  In May 2010, the
Association provisionally approved the new specialty under the
name "The American College of Veterinary Sports Medicine and
Rehabilitation" relying on Lyons' work product and announced it
on the Association's website.  Id. ¶ 131.  The College was
incorporated as a Colorado non-profit organization on June 2,
2011, with a principal place of business in Auburn, Alabama.  Id.
¶ 5.

> ### C.   Federal Jurisdiction

This Court's subject matter jurisdiction arises under the
trademark laws of the United States, 15 U.S.C. §§ 1051 et seq.
(the "Lanham Act"), jurisdiction being conferred by 15 U.S.C. §
1121 and 28 U.S.C. §§ 1331 and 1338.  Supplemental jurisdiction
arises under 28 U.S.C. § 1367(a) as to the state law claims.

> ### D.   Personal Jurisdiction

The Association has moved to dismiss the case for lack of
personal jurisdiction.  Association's Mem. 17-20

"To hear a case, a court must have personal jurisdiction
over the parties, that is, the power to require the parties to
obey its decrees."  Daynard v. Ness, Motley, Loadholt, Richardson
& Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002) (quoting United
States v. Swiss Am. Bank, Ltd., 191 F.3d 30, 35 (1st Cir. 1999))
(internal quotation marks omitted).  "The plaintiff bears the
burden of proving the court's personal jurisdiction over a

defendant." Id. Due process requires the Court to determine whether the defendant has maintained "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Under the minimum contacts test "[a] district court may exercise authority over a defendant by virtue of either general or specific [personal] jurisdiction." Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998).

The prima facie standard is the "most conventional" procedure to resolve question of personal jurisdiction. Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995). Under the prima facie standard the "plaintiff must go beyond the pleadings and make affirmative proof" to establish the existence of personal jurisdiction over the defendant. Boit v. Gar-Tec Pros., Inc., 967 F.2d 671, 675 (1st Cir. 1992).

General jurisdiction exists when the defendant has engaged in "continuous and systematic activity" in the forum, even if the activity is unrelated to the suit. United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992). There is no specific test to show the defendant engaged in continuous and systematic activity in the forum, but the court may consider certain factors such as (1) whether the

corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings, or bank accounts; and (4) the volume of business conducted in the state by the corporation.  See Massachusetts Inst. of Tech. v. Micron Tech., Inc., 508 F. Supp. 2d 112, 120-21 (D. Mass. 2007) (Woodlock, J.).

Here, Lyons and Homecoming Farm argue that although the Association does not have an office in Massachusetts, this Court still ought conclude that there is general personal jurisdiction over the defendant because the Association has a significant volume of business conducted in the Commonwealth.  Lyons' Opp'n to Association 19 & n.13.  Out of more than 81,000 members nationwide, the Association has 1,876 regular dues paying members in Massachusetts.  Id. at 18.  The Association also regularly solicits business in Massachusetts in the form of memberships from both students and veterinarians, conducts conferences and seminars in Massachusetts, and solicits grants and donations from Massachusetts residents.  Id.  For this purpose, the Association keeps a separate IRS EIN for Massachusetts to declare the income from its organizational activities.  Id. at 18-19.  The Association also funds scholarships and research for Massachusetts veterinary students and academics as well as job

10

placement and other career related services.  Id. at 18.
Further, the Association promulgates the standards for veterinary
school accreditation and derives revenue from such accreditation.
 Id.  Massachusetts requires graduation from an Association
accredited school for licensure - including at least one
accredited school in Massachusetts.  Id.

Based on these allegations, this Court is satisfied that it
has personal jurisdiction over the Association.

II.  **ANALYSIS**

A.  **Legal Standard**

To survive a motion to dismiss for failure to state a claim
upon which relief may be granted, a plaintiff must present facts
that make his claim plausible on its face.  Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 570 (2007).  A viable complaint must be
well-pled and the facts must support logical conclusions,
specifically the complaint must contain "[m]ore than labels and
conclusions, and a formulaic recitation of the elements of the
cause of action."  Id. at 555.  When evaluating a motion to
dismiss, this Court must take "all the factual allegations in the
complaint as true."  Maldonado v. Fontanes, 568 F.3d 263, 266
(1st. Cir 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678
(2009)).

**B.   Lyons and Homecoming Farm's Trademark Claims Against the Association (Counts I, II, III, and VIII)[2]**

The Association has moved to dismiss the trademark claims. Association's Mem. 9-12.  The issue presented is whether Lyons and Homecoming Farm have sufficiently alleged that the Association as an accreditation service organization has infringed Lyons' trademark by announcing the approval of and endorsing the College's mark, when the Association knew of the marks' disputed ownership.  The heart of the dispute is whether the Association's approval of the College's specialty under the marks "The American College of Veterinary Sports Medicine and Rehabilitation" and "ACVSMR" creates actual confusion in the public mind.

"The purpose of a trademark is to identify and distinguish the goods of one party from those of another."  <u>Colt Def. LLC</u> v. <u>Bushmaster Firearms, Inc.</u>, 486 F.3d 701, 705 (1st Cir. 2007) (citing 17 U.S.C. § 1127).  To establish trademark infringement under the Lanham Act, a plaintiff must prove that: (1) the plaintiff owns and uses the disputed marks; (2) the defendant used similar or identical marks without permission; and (3) unauthorized use likely confused consumers, harming the plaintiff

---

[2] The claims based on trademark are Federal trademark infringement (Count I), unfair competition (Count II), common-law trademark infringement (Count III), and common-law unfair competition (Count VIII).  The College has not moved to dismiss these claims.

(e.g., lost sales). Venture Tape Corp. v. McGills Glass Warehouse, 540 F.3d 56, 60 (1st Cir. 2008).

The first two prongs are not seriously disputed. Lyons alleges that she uses the marks "The American College of Veterinary Sports Medicine and Rehabilitation" and "ACVSMR," which were registered by her on May 24, 2005. Compl. ¶ 16. Five years later, in May 2010, the College sought approval of the new specialty before the Association under the same name and marks without Lyons' authorization. Id. ¶ 131.

As to the third prong, the "likelihood of confusion" among consumers, the Court is required to assess the eight criteria: "the similarity of the marks; the similarity of the goods; the relationship between the parties' channels of trade; the relationship between the parties' advertising; the classes of prospective purchasers; evidence of actual confusion; defendant's intent in adopting its mark; and the strength of the plaintiff's mark." Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 10 n.6 (1st Cir. 2008) (quoting Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482, 487 (1st Cir. 1981)).[3]

---

[3] Lyons' claimed violations of 15 U.S.C. § 1114 (Federal trademark infringement - Count I), violation of 15 U.S.C. § 1125 (Unfair competition - Count II), and common law trademark infringement (Count III) are subject to the same legal standard, namely, "likelihood of confusion." See Boston Duck Tours, 531 F.3d at 12 (holding that confusion is an element of a Section 1114 claim); Three Blind Mice Designs Co. Inc. v. Cyrk, Inc., 892 F. Supp. 303, 310 (D. Mass. 1995) (Saris, J.) (determining that confusion is an element of a Section 1125 claim); Diálogo, LLC v.

Here, Lyons and Homecoming Farm sufficiently allege that the College created a veterinary specialty with the same name, using an identical mark, and targeting the same market, namely veterinarians.  Compl. ¶¶ 125-28.  Lyons also alleges that the Association uses the same channels of advertisement as Lyons, including publications, seminars, and dissemination of information over the internet.  Id. ¶ 131.  While Lyons and Homecoming Farm have not alleged actual confusion, they allege that consumers are likely to be confused about the origin of the veterinarian specialty and mistakenly believe that Lyons is affiliated with the Association.  Id. ¶ 128.

With respect to the Association's intent, Lyons and Homecoming Farm allege that the Association knew of the dispute over the ownership of the mark.  Id. ¶¶ 88-91, 104, 129-30.  Further, Lyons and Homecoming Farm allege that the Association provisionally approved the College's proposed specialty knowing that the application relied on Lyons' trademark and work product.  Id. ¶¶ 124-25.  Moreover, the Association announced on its website that it acknowledges the College's new veterinary

---

Bauzá, 467 F. Supp. 2d 115, 125 n.9 (D. Mass. 2006) (Ponsor, J.) (noting that the common law claim is substantially similar to Federal trademark infringement claim); see also Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc., 718 F.2d 1201, 1209 (1st Cir. 1983) ("[P]laintiff must support a charge of unfair competition with a showing of likelihood of confusion.").

specialty, providing the College's contact information and using the "ACVSMR" mark.  Id. ¶ 131.[4]

The Association argues that reporting on an event or creation of an organization is not a "trademark use" of the "ACVSMR" mark and, in any event, it is a fair use of the mark because it "describe[s] rather than identif[ies] the user's goods, services or business."  Association's Mem. 10-11 (citing WCVB-TV v. Boston Athletic Ass'n, 926 F.2d 42, 46 (1st Cir. 1991) (holding that a broadcast channel use of the words "Boston Marathon" would not confuse the typical viewer, and the use of the trademark to describe and announce the event was fair use)).

The First Circuit in WCVB-TV distinguished between the use of a mark to announce an event (which does not create a likelihood of confusion), and the use of a mark to create an illusion of sponsorship (which does create a likelihood of confusion).  926 F.2d at 45.  In the first situation, where the mark is used in a non-infringing manner, the court held that "television viewers (unlike sports fans who might want to buy an official t-shirt with the name of a favorite event, team or player) wish to see the event and do not particularly care about the relation of station to event-promoter."  Id. at 46.  This is not the factual scenario alleged here because potential students

---

[4] It can be inferred that the Association has the power to preclude Lyons from making a similar application with the same marks, now that it has endorsed the College's use of the marks.

interested in the veterinary specialty do care whether the College's specialty is accredited by the Association.

The use of a trademark causes a likelihood of confusion since "when a [defendant] intentionally uses another's mark as a means of establishing a link in consumers' minds with the other's enterprise, and directly profits from that link, there is an unmistakable aura of deception." Id. at 45 (citing Boston Athletic Ass'n v. Sullivan, 867 F.2d 22, 35 (1st Cir. 1989)) (deciding that likelihood of confusion exists when the defendant, without authorization, used the mark, "Boston Marathon," on his t-shirts, and sold them during the event, permitting the customer to wrongly or confusedly think that his t-shirts were somehow "official").

Here, Lyons and Homecoming Farm allege that the Association has been taking advantage of its endorsement of the College's veterinary specialty, Compl. ¶ 131, specially as the Association is aware of the disputed ownership of the "ACVSMR" mark. Id. ¶¶ 87-91. The Association's representative witnessed the altercation between Lyons and Gillette in July 2004. Id. ¶ 104. In fact, the relationship between Lyons and the College was a matter of concern, that the College sought to clarify with its two letters sent to the Association. Id. ¶¶ 129-30. The Association's subsequent approval of the College using the same mark created a likelihood of confusion as to the ownership of the

"ACVSMR" mark, since the College and Lyons and Homecoming Farm both claimed such ownership.  Colt Def. LLC, 486 F.3d at 705 ("The purpose of a trademark is to identify and distinguish the goods of one party from those of another." ).  Now the Association is endorsing one organization over the other, providing the contact information of the College over Lyons' institution.  Compl. ¶ 131 (noting that the Association's website uses the "ACVSMR" mark to endorse the College's provisional approval as a veterinary specialty organization and providing the College's contact information).

Lyons and Homecoming Farm's complaint therefore alleges sufficient facts to establish the "likelihood of confusion."  The claims for Federal trademark infringement, unfair competition, common-law trademark infringement, and common-law unfair competition all turn on the same legal standard of "likelihood of confusion."  As this is the only issue raised by the Association as to these claims, they all survive the motion to dismiss.

C.   **Trademark Dilution Claim (Count IV)**

To establish trademark dilution, a plaintiff must prove that someone caused the "blurring or dilution by tarnishment of [a] famous mark."  15 U.S.C. § 1125(c).  Unlike the other trademark claims in this case, trademark dilution does not require proof of the likelihood of confusion.  Id.  The only contention the Association raises against this claim is that Lyons and

17

Homecoming Farm failed to allege that the "ACVSMR" mark is "famous."  Association's Mem. 12.

Lyons and Homecoming Farm allege that Lyons has owned her mark for almost two decades and it is nationally and internationally renowned in the veterinary community.  Compl. ¶¶ 18, 167.  The Association's assertion that the complaint fails because it does not use the word "famous" is inconsequential.

The complaint here, however, still remain insufficient.  I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 45 (1st Cir. 1998) (holding that "'famous' and 'dilution' are terms of art given specific rigorous meanings by the [Federal Trademark Dilution Act]").  The fact that the "ACVSMR" mark has acquired a strong secondary meaning and an inherently distinctive designation "is nowhere near sufficient to achieve the status of 'famous mark.'"  Id. at 47 (establishing that a mark nationally renowned in "the world of interior design and high-end bathroom fixtures" is not sufficiently famous under Section 1125(c)).  See 15 U.S.C. § 1125(c) (clarifying that "a mark is famous if it is widely recognized by the general consuming public of the United States"); TCPIP Holding Co., Inc. V. Haar Commc'n's, Inc., 244 F.3d 88, 99 (2nd Cir. 2001) ("[E]xamples of eligible, famous mark's . . . are marks that for the major part of the century have been household words throughout the United States.").

Here, although the "ACVSMR" mark might be renowned in the veterinary community, the "ACVSMR" mark is not famous under Section 1125(c).  Therefore, the Court concludes as matter of law the "ACVSMR" mark has not achieved the status of a "famous" mark and Lyons and Homecoming Farm's federal trademark dilution claim fails.

**D.   Dilution of the Uniqueness of the ACVSMR Mark (Count V)**

The Massachusetts anti-dilution statute is less stringent than the federal statute.  The Commonwealth requires the plaintiff to "show (1) that its mark is distinctive, and (2) that the defendant's use of a similar mark has created a likelihood of dilution." Santander Consumer USA Inc. v. Walsh, 762 F. Supp. 2d 217, 231-32 (D. Mass. 2010) (Bowler, M.J.) (quoting Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc., 718 F.2d 1201, 1209 (1st Cir. 1983).  The likelihood of dilution may result from the diminution in the uniqueness and individuality of the plaintiff's mark.  Id. at 232 (quoting Hasbro, Inc. v. Clue Computing, Inc., 66 F. Supp. 2d, 117, 137 (D. Mass. 1999) (Woodlock, J.).  Unlike the other trademark claims in this case, trademark dilution does not require proof of the likelihood of confusion or that the Association is Lyons' competitor.  Mass. Gen. Laws ch. 110H, § 13.

Here, even though Lyons and Homecoming Farm failed to allege that the "ACVSMR" mark was "famous" under the federal act, the

less stringent requirements of "distinctiveness" under
Massachusetts law are met.  Lyons used the mark for more than
fifteen years at conferences and research meetings at national
and international level.  Santander Consumer USA Inc., 762 F.
Supp. 2d at 231 (holding that plaintiffs' long and extensive use
of the marks together with their advertising and promotional
efforts and reputation provide sufficient support to classify the
marks as distinctive).

Additionally, the Association knew about the disputed
ownership of the "ACVSMR" mark because its representative
witnessed the altercation between Lyons and Gillette in 2004,
Compl. ¶¶ 88-91, 104, and because it received subsequent letters
from the College explaining the relationship between Lyons and
the College, id. ¶¶ 129-30.  The Association's subsequent
approval of the College's use of the same mark created a
"diminution in the uniqueness and individuality" of the "ACVSMR"
mark since two parties have been claiming ownership of the mark.
Now the Association is endorsing one institution over the other,
providing the contact information of the College over Lyons'
institution, and as a result of the Association's endorsement,
Lyons will not be able to register another veterinary specialty
under the same name.  Id. ¶ 131.

Therefore, Lyons and Homecoming Farm sufficiently have
alleged that the Association has caused the diminution in the

uniqueness and individuality of the "ACVSMR" mark under the
Massachusetts anti-dilution statute.  Mass. Gen. Laws ch. 110H, §
13.

**E.    Lyons and Homecoming Farm's Copyright Claims (Counts VI)**

To sustain a copyright infringement action, the plaintiff
must allege: 1) ownership of a valid copyright, and 2) that the
defendant copied constituent elements of the work that are
original.  Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc., 499
U.S. 340, 361 (1991).

**1.    Lyons and Homecoming Farm's Complied With Registration Requirement Prior to Filing Her Copyright Infringement Claim**

The College argues that the complaint fails because it does
not allege the copyright "registration numbers."  College's Mem.
7.  No such a requirement is imposed by law.  The Copyright Act
only requires the registration of the copyright prior to filing
an action for infringement.  17 U.S.C. § 411(a).  The Supreme
Court has declined to address this issue.  Reed Elsevier, Inc. v.
Muchnick, 130 S.Ct. 1237, 1249 (2010) ("We also decline to
address whether § 411(a)'s registration requirement is a
mandatory precondition to suit."); id. at 1246 ("§ 411(a)
expressly allows courts to adjudicate infringement claims
involving unregistered works . . . where the holder attempted to
register the work and registration was refused."); see Feldman v.

<u>Twentieth Century Fox Film Corp.</u>, 723 F. Supp. 2d 357, 364 (D. Mass. 2010) (Woodlock, J.) ("It appears that no court in this circuit has addressed the narrow issue of whether a work whose effective date of registration (but not actual date of registration) pre-dates the filing of the complaint is 'registered' within the meaning of Section 411(a).") .

Here, Lyons and Homecoming Farm's complaint states that Lyons has a registered copyright.  Compl. ¶ 19-20.  Lyons and Homecoming Farm filed a copy of the registration of the copyright, issued on December 6, 2011, together with the oppositions to the motion to dismiss.  Lyons' Opp'n to Association, Ex. D, U.S. Copyright Office Catalog Entry, ECF No. 12-5; Lyons' Opp'n to College, Ex. D, U.S. Copyright Office Catalog Entry, ECF No. 13-8.  Apparently, Lyons registered the copyright prior to filing the lawsuit on December 12, 2011.

The College avers that this is not enough because citing the registration numbers is required by law.  College's Reply 2 (citing Local Rules, Appendix C and 17 U.S.C. § 508).  This contention misstates the law.

Section 508 of the Copyright Act requires the Court, not the plaintiff, to notify the Register of Copyrights "as far as shown by the papers filed in court . . . of the registration number of each work involved" in a copyright claim.  17 U.S.C. § 508.

22

It is true that a plaintiff must allege plausible facts demonstrating a valid copyright, Feldman, 723 F. Supp. 2d. at 363, but Section 508 does not requires that the complaint include a registration number, see 17 U.S.C. § 508 (stating that additional information about the copyrighted work in dispute that arrived through "amendment, answer, or other pleading" may be sent to the Register of Copyrights at a "later" date).  Failure to file the registration numbers does not require dismissal of the complaint, especially where the plaintiff includes copies of the registration in other filings to the court.  See Lotus Dev. Corp. v. Borland Int'l, Inc., 49 F.3d 807, 813 (1st Cir. 1995) aff'd, 516 U.S. 233 (1996) ("In judicial proceedings, a certificate of copyright registration constitutes prima facie evidence of copyrightability and shifts the burden to the defendant to demonstrate why the copyright is not valid.").

The cases cited by the College and the Association here are not on point.  They relate to the failure to register the work, rather than the failure to include the "registration numbers" in the complaint.  See, e.g., Inkadinkado, Inc. v. Meyer, No. Civ.A. 03-10332-GAO, 2003 WL 22282177, at *3-4 (D. Mass. Sept. 16, 2003) (O'Toole, J.) ("It appears uncontroverted that the infringement claim was brought before registration, and therefore Inkadinkado's motion [to dismiss] is well grounded."); Kusek v. The Family Circle, Inc., 894 F. Supp. 522, 528-29 (D. Mass. 1995)

(Neiman, M.J.) ("The Plaintiff fails to allege that she registered her work in the United States Copyright Office.").

Here, Lyons subsequently notified the Court of her registration numbers and thus demonstrated plausible ownership of a valid copyright.  <u>E.g.</u>, Lyons' Opp'n to Association, Ex. D. U.S. Copyright Office Catalog Entry, ECF No. 12-5.

Lyons' lack of citation to the registration numbers does not warrant dismissal of the complaint.

> **2.  Lyons and Homecoming Farm Sufficiently Alleges That the College Copied Constituent Elements of the Work**

The College claims that Lyons and Homecoming Farm failed to allege the second element of a copyright infringement action, College's Reply 2-3, which relates to copying "constituent elements of the work that are original."  <u>Feist Publ'n's</u>, 499 U.S. at 361.  Proof of wrongful copying is a two-step process. The plaintiff must show: 1) "that copying actually occurred," and 2) "that the copying of the copyrighted material was so extensive that it rendered the infringing and copyrighted works substantially similar."  <u>Johnson</u> v. <u>Gordon</u>, 409 F.3d 12, 18 (1st Cir. 2005) (citations and internal quotation marks omitted). When plaintiff does "not offer[] any direct evidence of actual copying, her factual allegations must plausibly allege both access and probative similarity."  <u>Feldman</u>, 723 F. Supp. 2d at 365 (citing <u>Coquico, Inc.</u> v. <u>Rodriguez-Miranda</u>, 562 F.3d 62, 67

(1st Cir. 2009)).

Here, Lyons and Homecoming Farm allege that Lyons gave the materials to Gillette on September 9, 1999 to apply to the Association.  Compl. ¶ 74.  Subsequently, Lyons gave the same copies of her work to the Committee.  Id. ¶ 91.  Therefore, Lyons and Homecoming Farm sufficiently allege facts to sustain the conclusion that the Committee had access to her work.  Grubb v. KMS Patriots, L.P., 88 F.3d 1, 3 (1st Cir. 1996) (holding that plaintiff must show that the defendant had "reasonable opportunity to copy").

Lyons and Homecoming Farm have also established that the works are similar so that the "court may infer that there was factual copying." Lotus Dev. Corp., 49 F.3d at 813.  Lyons and Homecoming Farm filed the alleged original work and the infringing copies as attachments to their complaint.[5]  Compl., Exs. A-E, ECF No. 1-1; Exs. F-K, ECF Nos. 1-2 – 1-3.  When Lyons was ousted from the Committee, she warned the Committee that they required her authorization to use the copyrighted work.  Id. ¶ 102.  The College, however, used Lyons' work to promote the College on its website and to apply to the Association without Lyons' authorization.  Id. ¶¶ 123, 178.

---

[5] Lyons and Homecoming Farm also filed a side-to-side comparison of some passages of the allegedly copied Articles of Incorporation.  Lyons' Opp'n to College, Ex. M, Copyright Infringement Gillette, ECF No. 13-14.

Accordingly, Lyons and Homecoming Farm have adequately pled a cause of action for copyright infringement against the College.

### 3. Lyons and Homecoming Farm Failed to Allege That the Association Copied Constituent Elements of the Work

As to the Association, however, Lyons and Homecoming Farm cannot satisfy the second element of infringement because they failed to allege that the Association actually copied or used any of their materials. Feist Publ'n's, 499 U.S. at 361 (requiring the plaintiff to prove copying of "constituent elements of the work that are original"). Lyons and Homecoming Farm allege that the Association approved the College's application, which "relies on the copyrighted content of [Lyons'] work product." Compl. ¶¶ 125, 178. The Association allegedly copied the name "American College of Veterinary Sports Medicine and Rehabilitation" and its acronym "ACVSMR," both of which the Association referenced on its website and on membership applications. Id. ¶ 124. These allegations are insufficient to sustain a cause of action for copyright infringement against the Association. 37 C.F.R. § 202.1(a) (stating that copyright protection is not available to "[w]ords and short phrases such as names, titles, and slogans"); see, e.g., Arica Inst., Inc. v. Palmer, 970 F.2d 1067, 1072-73 (2nd Cir. 1992) (noting that single words and short phrases in copyrighted text are not copyrightable); Alberto-Culver Co. v. Andrea Dumon, Inc., 466 F.2d 705, 711 (7th Cir. 1972) (holding

that "most personal sort of deodorant" is a short phrase or

expression, not an "appreciable amount of text," and thus not

subject to copyright protection); Lewinson v. Holt, 659 F. Supp.

2d 547, 568 (S.D.N.Y. 2009) ("It is axiomatic that words, short

phrases, titles, and slogans are not subject to copyright, even

if they can be trademarked.") (internal quotation marks omitted).

Therefore, Lyons and Homecoming Farm failed to allege that

the Association copied constituent elements of the work.

**F.   Lyons and Homecoming Farm's State Copyright Claims Are
       Preempted (Count VII)**

The Copyright Act "explicitly controls vesting of copyright

in authors; sets out the ownership status of authors and co-

authors of joint works; and establishes copyright ownership by

employers who commission works made for hire." Cambridge

Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co.

KG., 510 F.3d 77, 86 (1st Cir. 2007) (citing 17 U.S.C. § 201).

The Copyright Act also expressly preempts common-law copyright

claims.  17 U.S.C. § 301(a) ("[N]o person is entitled to any such

right or equivalent right in any such work under the common law

or statutes of any State."); John G. Danielson, Inc. v.

Winchester-Conant Props., Inc., 322 F.3d 26, 44 (1st Cir. 2003)

("Federal copyright law preempts rights under state law when they

are the equivalent of those granted under the Copyright Act.").

However, "[i]f a state cause of action requires an extra element,

beyond mere copying, preparation of derivative works,

performance, distribution or display, then the state cause of action is qualitatively different from, and not subsumed within, a copyright infringement claim and federal law will not preempt the state action." <u>Data Gen. Corp.</u> v. <u>Grumman Sys. Supp. Corp.</u>, 36 F.3d 1147, 1164 (1st Cir. 1994) (internal quotation marks omitted); <u>see</u> <u>Tingley Sys., Inc.</u> v. <u>CSC Consulting, Inc.</u>, 152 F. Supp. 2d 95, 105 (D. Mass. 2001) (Lindsay, J.).

Under Massachusetts law, to prove "common law copyright infringement, the plaintiff must prove substantial similarity and access" to an original work. <u>O'Neill</u> v. <u>Dell Pub'g Co., Inc.</u>, 630 F.2d 685, 686 (1st Cir. 1980) (citation and footnote omitted) (alleging infringement of common law copyright in unpublished manuscript novel); <u>see, generally,</u> <u>Edgar H. Wood Assocs., Inc.</u> v. <u>Skene</u>, 347 Mass. 351, 356 (1964). Common law copyright protection only extends to unpublished works prior to January 1, 1978 when the Copyright Act of 1976 came into effect. 17 U.S.C. § 301 (1978); <u>accord</u> <u>Forward</u> v. <u>Thorogood</u>, 985 F.2d 604, 605 & n.1 (1st Cir. 1993).

Here, Lyons and Homecoming Farm allege that Lyons registered the copyrights of her work on the Commonwealth of Massachusetts, Compl. ¶ 20, and their "common law copyright" cause of action is not preempted because it is qualitatively different from the federal claim. Lyons' Opp'n to Association 4-5; Lyons' Opp'n to College 5-6. This argument is unavailing. Lyons and Homecoming

Farm allege that Lyons created the copyrighted work some time
between 1996 and 1997, <u>see</u> Compl. ¶¶ 39, 42, 46, thus they fail
to allege that it was an unpublished work created prior to
January 1, 1978 when the Copyright Act of 1976 came into effect,
<u>Forward</u>, 985 F.2d at 605.  Lyons and Homecoming Farm's common-law
claim for copyright infringement rests in the same set of facts
as their federal claim, namely that the defendants copied,
distributed, and displayed the copyrighted work.  <u>Compare</u> Compl.
¶ 183 (Common Law Infringement claim) <u>with</u> <u>id.</u> ¶ 178 (Federal
Copyright Infringement claim).  Since Lyons and Homecoming Farm's
common-law copyright claim has an extra element, it is not
qualitatively different from their federal copyright claim, and
therefore their claim is preempted.  <u>See</u> <u>Feldman</u>, 723 F. Supp. 2d
at 367 ("A state law claim is preempted if 'it does not require
an element beyond mere copying, preparation of derivative works,
performance, distribution or display.'") (quoting <u>Santa-Rosa</u> v.
<u>Combo Records</u>, 471 F.3d 224, 226 (1st Cir. 2006)).

### G.   The Misappropriation of "Intellectual Property" Claim Is Time-Barred (Count IX)

The Court is not aware of the existence of a cause of action
for misappropriation of "intellectual property" in the First
Circuit.[6]  Lyons and Homecoming Farm fail to cite any case that

---

[6] The Court finds only two cases in this Circuit that refer
to a cause of action for misappropriation of intellectual
property, and neither of them provides a guide to the contours of
this supposed cause of action.  <u>Fin Brand Positioning, LLC</u> v.

29

supports the existence of a "misappropriation of intellectual property" theory, instead she alleges that this claim arises from the generic definition of "misappropriation."  Lyons' Opp'n to College 7.

To the extent that some courts in other circuits have recognized the existence of a cause of action for "misappropriation of intellectual property," courts treat it as a tort.  See, e.g., Mention v. Gessell, 714 F.2d 87, 89 (9th Cir. 1983) (citing 3 Nimmer on Copyright, § 12.05 n.1 (1982)).  The Massachusetts statute of limitations for tort is three years. Mass. Gen. Laws ch. 260, § 2A.  In a claim for misappropriation, the statute of limitations starts to run from "an event or events . . . that are reasonably likely to have put the plaintiff on notice that he has been harmed."  Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 241 (1st Cir. 2005) (quoting Stark v. Advanced Magnetics, Inc., 50 Mass. App. Ct. 226, 233 (2000)).

Here, the grounds for Lyons and Homecoming Farm misappropriation claim accrued in 2004, but they did not file their complaint until seven years later in 2011.  Lyons and

---

Take 2 Dough Prods., Inc., 758 F. Supp. 2d 37, 43 (D.N.H. 2010) (holding that "plaintiffs' multifaceted claim for misappropriation of intellectual property and services" was not barred by pending patent application); Picker Int'l, Inc. v. Leavitt, 865 F. Supp. 951, 956 (D. Mass. 1994) (Wolf, J.) (allowing motion to "amend complaint to add claims based on the alleged misappropriation of intellectual property").

Homecoming Farm allege that their claims are not time-barred because they did not learn about the misappropriation until September 2010, when the Committee disclosed the extent of the wrong-doing during a trademark cancellation proceeding.  Compl. ¶ 138.  This argument is unavailing.

Lyons and Homecoming Farm allege that Lyons first learned about the College's letters,[7] during the trademark cancellation action.  Id. ¶¶ 111-17, 129.  The knowledge of these letters, however, is irrelevant to Lyons misappropriation claim.  Id. ¶¶ 129-30 (alleging that Gillette sent two letters to the Association explaining the relationship between the College and Lyons, and the reasons for her recusal).

There is no justification to toll the statute of limitations because this is not a case where the cause of action was "inherently unknowable." Quigley v. Unum Life Ins. Co., 688 F. Supp. 80, 83 (D. Mass. 1988) (Caffrey, J.) (citing Mass. Gen. Laws ch. 260, § 12).  There is no allegation that the Committee took any affirmative action to deceive Lyons and conceal the fact that the College had used or was using Lyons' materials to apply

---

[7] Lyons contradicts herself regarding the purported date she first learned about the content of Gillette's letters.  Compare Compl. ¶ 116 (learning on August 2011 of false statements contained in the letters during discovery before the USPTO) and id. ¶ 129 (learning on November 30, 2011 of false statements contained in the letters) with Lyons' Opp'n to College 11 ("Lyons did not learn of Gillette's defamatory correspondence until on or after September of 2010" in the context of a trademark cancellation action).

to the Association.  See id. at 83-84.  In fact, Lyons
contributed to drafting the application.  Compl. ¶¶ 81, 87-88.

Moreover, Lyons was on reasonable notice of the
misappropriation as early as the year 2004.  Lyons does not
dispute that she gave her copyright materials to Gillette on
September 9, 1999, id. ¶ 74, and on January 19, 2003, the
Committee drafted a letter of intent using Lyons' intellectual
property to request approval from the Association, id.  ¶¶ 81-82.
On May 18, 2004, Lyons gave the Committee and the Association
additional documents, including proposed by-laws and articles of
incorporation.  Id. ¶¶ 83-84, 91, 108.  Therefore, Lyons knew
that Gillette and the Committee were in possession of her alleged
intellectual property and they were using those documents to
apply to the Association well before she was asked to recuse
herself from the Committee.  Id. ¶ 82.  Lyons also knew that the
Committee never returned the documents to her after her recusal.
Id. ¶ 107.  Therefore, taking Lyons and Homecoming Farm's claims
as true, from the moment Lyons walked away from the Committee,
the College was not authorized to use her work.  Id. ¶ 102.
Lyons explicitly alleged such unauthorized use when she claims:
"The [Association] participated in the misappropriation when it
granted provisional recognition to Gillette and his group in May
of 2010 based upon an application it knew was based upon the

<u>misappropriated work</u> product of Doctor Lyons." Lyons' Opp'n to Association 11 (emphasis added).

The events that took place in 2004 were "reasonably likely" to have put Lyons on notice that the Committee was using her documents to continue its application to the Association since the Committee never returned her documents. <u>Id.</u> ¶ 107; <u>see</u> <u>Massachusetts Eye and Ear Infirmary</u>, 412 F.3d at 241.

Thus, even were this Court to recognize a claim for misappropriation of intellectual property, the claim would be time barred.

### H.   Lyons and Homecoming Farm's Chapter 93A Claim (Count X)

First, to bring an action under Chapter 93A, the unfair or deceptive act must occur substantially within the Commonwealth. Mass. Gen. Laws ch. 93A, § 11. Here, the only link with the Commonwealth is that Lyons' company, Homecoming Farms is a New Hampshire corporation with its principal place of business in Brockton, Massachusetts. Compl. ¶ 3. All the alleged wrongful acts were committed from 2004 to 2011 during the process of creating the College and preparing its application to the Association. It is undisputed that none of the meetings, incorporation of the College or application to the Association took place in Massachusetts. Lyons and Homecoming Farm's allegations thus are not sufficient to support a Chapter 93A claim.

Second, a Chapter 93A claim has a four-year statute of limitations.  Mass. Gen. Laws, ch. 260, § 5A.  Lyons and Homecoming Farm's Chapter 93A claim is premised on the infringement of trademark, copyright, and misappropriation of "intellectual property."  Lyons' Opp'n to Association 13. Therefore, the cause of action accrued in 2004 and the statute of limitations ran in 2008.  <u>Massachusetts Eye and Ear Infirmary</u>, 412 F.3d at 241 (holding that although it is not a general rule, "where trade secrets of varying importance are alleged to have been divulged over a period of years — that notice of one misappropriation can constitute sufficient notice to begin tolling the statute for all misappropriations").  Lyons and Homecoming Farm's Chapter 93A claim must be dismissed.

## I.   Lyons and Homecoming Farm's Loss of Business Opportunity (Count XII)

This is an issue of first impression.  Lyons and Homecoming Farm request this Court to apply the doctrine of loss of chance. In <u>Matsuyama</u> v. <u>Birnbaum</u>, 452 Mass. 1 (2008), the Supreme Judicial Court adopted for the first time the doctrine of loss of chance in the context of "medical malpractice wrongful death action, where a jury found that the defendant physician's negligence deprived the plaintiff's decedent of a less than even chance of surviving cancer."  <u>Id.</u> at 3.  The Court in <u>Matsuyama</u> noted that "[p]ermitting recovery for loss of chance is particularly appropriate in the area of medical negligence."  <u>Id.</u>

34

Lyons relies on <u>Matsuyama</u> and argues that this decision extends beyond the area of medical malpractice.  Lyons' Opp'n to College 12 n.11.

At least one court has recognized that the doctrine of loss of chance may apply to other professional malpractice claims. <u>Cold Spring Harbor Lab.</u> v. <u>Ropes & Gray LLP</u>, No. 11-10128-RGS, 2012 WL 112642, at *7 n.10 (D. Mass. Jan. 13, 2012) (Stearns, J.) (stating that the doctrine of loss of chance may apply to attorney's malpractice insofar as a patent application "would have had a better chance of earlier approval before the PTO" had the attorney "properly disclosed [the] invention rather than repeatedly relying on copied text").  This Court, however, is unaware of any case where the loss of chance doctrine has been applied outside malpractice claims.

Although this is not a malpractice case, Lyons and Homecoming Farm sufficiently allege that Lyons would have had a better chance of raising funds and certifying her veterinary specialty had the College produced its own name, marks, and application materials instead of copying Lyons and Homecoming Farm's work.  Although premised on another tort, Lyons' reasoning is similar to what my colleague held sufficient in <u>Cold Spring Harbor Lab.</u>, 2012 WL 112642, at *7.  Therefore, dismissal is not warranted although a more complete record could well put paid to this theory.

**J.  Lyons and Homecoming Farm Have Not Alleged Sufficient Facts to Sustain a Tortious Interference Claim (Count XIV)**

In order to assert a claim for intentional interference, a plaintiff must allege (1) "the existence of a contract or a business relationship which contemplated economic benefit" for the claimant; (2) "the defendants' knowledge of the contract or business relationship"; (3) "the defendants' intentional interference with the contract or business relationship for an improper purpose or by improper means"; and (4) damages.  Swanset Dev. Corp. v. City of Taunton, 423 Mass. 390, 397 (1996).  The limitations period on this claim is three years.  Mass. Gen. Laws ch. 260, § 2A.

Here, Lyons and Homecoming Farm allege that the College and the Association intended to deprive Lyons from creating a new veterinary specialty and to divert those donors, academicians, or clients that would otherwise use Lyons' services.  Lyons' Opp'n to College 15.  This tort is predicated on Lyons' severance from the College in 2004 and the College's application to the Association.  Lyons' Opp'n to Association 15-16; Lyons' Opp'n to College 14-15.

First, since the alleged interference occurred in 2004, this claim is time-barred.

Second, to the extent that Lyons and Homecoming Farm allege that the defendants collectively and intentionally interfered

36

with Lyons' relationship with potential donors, academicians, or clients that would otherwise use Lyons' services, Compl. ¶¶ 220-23, this claim fails to allege the existence of any particular relationship that existed in 2004 other than that among the members of the Committee and Lyons to create a new veterinary specialty.  The Association representative had a passive role in the 2004 Committee meetings.  Lyons and Homecoming Farm's complaint lacks any factual allegation to support that the Association did anything improper to interfere with a contract or a business relationship between Lyons and the College during the 2004 meetings.  Quincy Cablesystems, Inc. v. Sully's Bar, Inc., 650 F. Supp. 838, 847 (D. Mass. 1986) ("The interference must be intentional to be tortious.").

Third, to the extent that Lyons and Homecoming Farm allege that the College interfered with itself, the claim is barred because a party cannot be sued for interference with its own contract or relationship.  Blackstone v. Cashman, 448 Mass. 255, 260 n.8 (2007) ("A party to a contract cannot be held liable for intentional interference with that contract.") (citing Harrison v. NetCentric Corp., 433 Mass. 465, 477-78 (2001)).

Therefore, Lyons and Homecoming Farm's tortious interference claim must be dismissed.

## III. CONCLUSION

The Association's motion to dismiss, ECF No. 8, Counts I,

II, III, V, VIII, XII, and for lack of personal jurisdiction is DENIED, and ALLOWED as to Counts IV, VI, VII, IX, X, and XIV.

The College's motion to dismiss, ECF No. 10, Counts VI and XII is DENIED, and ALLOWED as to Counts VII, IX, X, XIV.

Accordingly, the motions to dismiss, ECF Nos. 8, 10, are ALLOWED in part and DENIED in part in accordance with this opinion.

SO ORDERED.

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE