UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHEILA LYONS, DVM and HOMECOMING FARM INC., <br><br> Plaintiffs, <br><br> v. <br><br> THE AMERICAN COLLEGE OF VETERINARY SPORTS MEDICINE AND REHABILITATION, INC. and THE AMERICAN VETERINARY MEDICAL ASSOCIATION, INC., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action No. 1:11-cv-12192 |

## ANSWER AND COUNTERCLAIMS BY THE AMERICAN COLLEGE OF VETERINARY SPORTS MEDICINE AND REHABILITATION

The American College of Veterinary Sports Medicine and Rehabilitation, Inc. (the "College"), by its undersigned attorneys, hereby answers the complaint filed in Civil Action No. 1:11-cv-12192 (the "Complaint") by plaintiffs Sheila Lyons and Homecoming Farm Inc. ("Lyons" or "Plaintiff"), and asserts counterclaims against Plaintiff, as follows:

### Introduction

1.   Admitted that Plaintiff has made many allegations in its Complaint, including those stated in Paragraph 1 of the Complaint.  The College denies the remaining allegations of Paragraph 1, express or implied.

### Parties

2.   Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 2 of the Complaint, and therefore denies same.

1

3.   Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 2 of the Complaint, and therefore denies same.

4.   Admitted, except that Dr. Gillette is no longer a defendant in this action.

5.   The first sentence of the first Paragraph 5 of the Complaint is admitted to the extent that the Organizing Committee of the College incorporated the College as a nonprofit corporation under the laws of Colorado on or about June 2, 2011.  The second sentence of Paragraph 5 is admitted to the extent that each individual named served as member of the board of the College as of the time the Complaint was filed.  The remaining allegations of Paragraph 5 of the Complaint are denied.

5.   Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in the second Paragraph 5 of the Complaint, and therefore denies same.

6.   Paragraph 6 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 6 of the Complaint, and therefore denies same.

7.   Admitted that Dr. Gillette has been a member of the AVMA during the periods addressed by the Complaint.  The College denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 7 of the Complaint, and therefore denies same.

## Related Non-Parties

8.   Admitted that Auburn University's  College of Veterinary Medicine, is a school of veterinary medicine located in Auburn, Alabama. Admitted that Dr. Gillette has taught at the school since 1997.

## Jurisdiction

9.   Paragraph 9 of the Complaint is a legal conclusion and does not require an answer.

10. Paragraph 10 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations.

11. Paragraph 11 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations as applied to itself and, as applied to the AVMA, denies knowledge or information sufficient to form a belief as to the truth of the allegations.

12. Paragraph 12 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations as applied to itself and, as applied to the AVMA, denies knowledge or information sufficient to form a belief as to the truth of the allegations.

13. Paragraph 13 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations as applied to itself and, as applied to the AVMA, denies knowledge or information sufficient to form a belief as to the truth of the allegations.

### Venue

14. Paragraph 14 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies knowledge or information sufficient to form a belief as to the truth of the allegations.

15. Paragraph 15 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations.

### General Allegations

### Alleged Creation and Registration of the ACVSMR Trademark

16. Paragraph 16 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations except admits that on May 24, 2005, Lyons filed an application to register the College's mark on the Supplemental Register.

17. Denied.

18. Denied.

19. The College denies the allegations of the first sentence of Paragraph 19 of the Complaint. The second sentence of Paragraph 19 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations.

20. Denied.

### Alleged Creation Of Homecoming Farm, Inc.

21. The College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 21 of the Complaint, and therefore denies same.

22. The College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 22 of the Complaint, and therefore denies same.

23. The College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 23 of the Complaint, and therefore denies same.

24. The College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 24 of the Complaint, and therefore denies same.

### Alleged Origination Of The ACVSMR

25. The College denies the allegations of Paragraph 25 of the Complaint to the extent they imply that Lyons has continuously operated under the mark "ACVSMR" since 1996.  The College denies knowledge or information sufficient to form a belief as to the truth of the remaining  allegations set forth in Paragraph 25 of the Complaint, and therefore denies same.

26. The College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 26 of the Complaint, and therefore denies same.

27. The College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 27 of the Complaint, and therefore denies same.

28. The College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 28 of the Complaint, and therefore denies same.

## **Alleged Creation Of The ACVSMR**

29. The College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 29 of the Complaint, and therefore denies same.

30. The College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 30 of the Complaint, and therefore denies same.

31. The College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 31 of the Complaint, and therefore denies same.

32. The College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 32 of the Complaint, and therefore denies same.

33. The College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 33 of the Complaint, and therefore denies same.

34. The College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 34 of the Complaint, and therefore denies same.

35. The College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 35 of the Complaint, and therefore denies same.

36. The College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 36 of the Complaint, and therefore denies same.

37. The College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 37 of the Complaint, and therefore denies same.

38. The College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 38 of the Complaint, and therefore denies same.

39. The College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 39 of the Complaint, and therefore denies same.

40. The College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 40 of the Complaint, and therefore denies same.

41. The College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 41 of the Complaint, and therefore denies same.

**Lyons Allegedly Contacts The AVMA To Discuss ACVSMR**

42. The College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 42 of the Complaint, and therefore denies same.

43. The College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 43 of the Complaint, and therefore denies same.

44. The College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 44 of the Complaint, and therefore denies same.

45. The College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 45 of the Complaint, and therefore denies same.

46. The College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 46 of the Complaint, and therefore denies same.

47. The College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 47 of the Complaint, and therefore denies same.

48. The College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 48 of the Complaint, and therefore denies same.

49. The College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 49 of the Complaint, and therefore denies same.

50. The College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 50 of the Complaint, and therefore denies same.

51. The College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 51 of the Complaint, and therefore denies same.

52. The College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 52 of the Complaint, and therefore denies same.

53. The College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 53 of the Complaint, and therefore denies same.

54. The College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 54 of the Complaint, and therefore denies same.

55. The College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 55 of the Complaint, and therefore denies same.

## The AVMA Principles of Veterinary Medical Ethics

56. Admitted that Paragraph 56 of the Complaint paraphrases part of Section I(A) of the Principles of Veterinary Medical Ethics of the AVMA.

57. Admitted that Paragraph 57 of the Complaint paraphrases part of Section (I)B of the Principles of Veterinary Medical Ethics of the AVMA.

58. Admitted that Paragraph 58 of the Complaint quotes parts of Section I(B) of the Principles of Veterinary Medical Ethics of the AVMA. The College denies knowledge or information sufficient to form a belief as to what these Principles were meant to recognize.

59. Denied to the extent that Paragraph 59 is not an accurate quotation of AVMA Principles of Veterinary Medical Ethics, and that those principles do not mention "due process." Admitted that Section II(H) the Principles provide in part that "Veterinarians should be honest and fair in their relations with others, and they should not engage in fraud, misrepresentation, or deceit," and Section II(I) provides that "Veterinarians should not slander, or injure the professional standing or reputation of other veterinarians in a false or misleading manner."

60. The College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 60 of the Complaint, which pertain to the legal and ethical responsibilities of other parties, but states that the College has at no time violated the Principles of Veterinary Medical Ethics of the AVMA, nor has it been accused of doing so outside the context of statements by Lyons and her attorneys.

### The Auburn University Statement of Ethical Principles

61. The College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 61 of the Complaint, which pertains to a different party who is no longer a defendant in this action.

62. The College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 62 of the Complaint.

### The Alleged Meeting With Gillette

63. Admitted that Lyons presented a paper entitled "Superficial Flexor Tendinitis in the Performance Horse-Etiology and Rehabilitation" at a conference in Corvallis, Oregon on or about August, 1999.  The College denies knowledge or information sufficient to form a belief as to the truth of the allegation that this paper was based on research done by Lyons through Homecoming Farm, Inc.  The remainder of the allegations of Paragraph 63 of the Complaint are denied.

64. Admitted that at the conference in Oregon, Dr. Gillette discussed the field of veterinary sports medicine, including the fact Dr. Gillette had previously contacted the AVMA about

establishing a specialty in this field.  The remainder of the allegations in Paragraph 64 of the Complaint are denied.

65. Denied.

66. Denied.

67. Denied.

68. Denied.

69. Denied.

70. Denied.

71. The College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 71 of the Complaint.

72. Denied.

73. Denied.

## Gillette Allegedly Gains Access To The Copyrighted Work Product

74. Denied.

75. Admitted that the Organizing Committee of the College, which at one time included Lyons, discussed training and requirements for candidate specialists on more than one occasion. The remaining allegations of Paragraph 75 of the Complaint are denied.

## Formation of the Organizing Committee

76. Admitted that in or about 2000, an Organizing Committee for the College was formed by a group of veterinarians, including Lyons and Dr. Gillette.  The remainder of the allegations in Paragraph 76 of the Complaint are denied.

77. Admitted that Doctor Clayton was asked to join and agreed to join the Organizing Committee in or after 2000.

78. Denied to the extent Paragraph 78 alleged that Lyons "filled a position" at the College. Admitted that Doctor Clayton  performs research in equine sports medicine.

79. Admitted that Doctors Gillette, Clayton and Lyons met in Michigan on or about October 2, 2002, and that they discussed the organization of the College.  Admitted that subsequent to this meeting, Doctors Taylor, Blythe and Nunamaker were asked to join the Organizing Committee.  The remainder of the allegations of Paragraph 79 of the Complaint are denied.

80. Denied

81. Admitted, except that the letter was developed by all six members of the Organizing Committee at that time.

82. The first sentence of Paragraph 82 of the Complaint is denied.  The second sentence of Paragraph 82 of the Complaint is admitted.

### The Organizing Committee Meeting In Chicago

83. Admitted.

84. Admitted that the articles of incorporation and by-laws for the College were discussed during the meeting in Chicago.  Denied to the extent Paragraph 84 alleges that Lyons presented any new documentation at that meeting or was solely responsible for drafting the by-laws or articles of incorporation.

85. Denied.

86. Denied.

87. Admitted that Doctor Larry Dee attended the meeting as a representative of the AVMA. The College denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 87 of the Complaint.

88. Admitted that Doctor Dee expressed kind words about the entire Organizing Committee's efforts, but denied that these statements were made in the context of any materials authored by Lyons in particular.

89. Denied

90. To the extent that allegations of Paragraph 90 of the Complaint refer to alleged statements at the May 18, 2004 meeting in Chicago, the allegations of Paragraph 90 of the Complaint are denied. The College denies knowledge or information sufficient to form a belief as to what Lyons may have said to Doctor Dee at another time.

91. Admitted that Lyons has at some time produced to the Organizing Committee a letter containing the same or substantially the same words quoted.  The remainder of the allegations in Paragraph 91 of the Complaint are denied.

**The Organizing Committee Meeting In Philadelphia**

92. Admitted that the Organizing Committee met in Philadelphia on or about July 26, 2004, in conjunction with an AVMA meeting, to further discussion the formation of the College, and admitted that Doctors Lyons and Gillette attended.  Denied to the extent Paragraph 92 alleges that the meeting was held to discuss materials authored solely by Lyons.

**Gillette Forces Lyons Off the Organizing Committee**

93. Admitted that at the end of the meeting, the Organizing Committee asked Lyons to step down from the committee, based on issues that had been discussed with Lyons in advance of the meeting.  The remainder of the allegations of Paragraph 93 of the Complaint are denied.

94. Admitted that the issues which precipitated Lyons' departure from the Organizing Committee were initially raised by certain individuals, but these individuals were not unnamed

and they initially raised their issues to the AVMA, not to the College.  The remainder of the allegations of Paragraph 94 of the Complaint are denied.

95. Denied.

96. Admitted that both Doctors Gillette and Nunamaker had received communications about the issues which precipitated Lyons' departure from the Organizing Committee, and which were discussed with her before the meeting in Philadelphia.

97. Denied.

98. Admitted only to the extent that one of the issues that precipitated Lyons' departure from the Organizing Committee was that she had held herself out as holding a PhD but repeatedly refused to provide proof of same.  The remainder of the allegations of Paragraph 98 of the Complaint are denied.

99. Denied.

100.     Denied.

101.     Denied.

102.     Denied.

103.     Denied.

104.     Denied to the extent that Paragraph 104 of the Complaint continues a chain of allegations that did not occur. The College further denies that Lyons' departure from the Organizing Committee was in violation of the AVMA Principles of Veterinary Medical Ethics. The College denies knowledge or information sufficient to form a belief as to what action Doctor Dee may have taken outside the presence of the College.

105.     Admitted that Lyons did not tender a letter of resignation.  The remaining allegations of Paragraph 105 of the Complaint are denied.

106.        Denied.

107.        Admitted that Dr. Gillette did not return any copyrighted materials to Lyons at this meeting or ask permission of her to use any of her alleged intellectual property. Denied to the extent Paragraph 107 of the Complaint alleges or implies that Gillette was in possession of any copyrighted material he had an obligation to return or required Lyons' permission to complete formation of the College.

108.        Denied.

109.        Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 109 of the Complaint, and therefore denies same.

110.        Paragraph 110 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations.

## The Allegedly False Accusations

111.        Denied to the extent that Paragraph 111 alleges or implies that Lyons' first learned of the reasons precipitating her departure from the Organizing Committee only in 2011. The College denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 111 of the Complaint, and therefore denies same.

112.        Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 112 of the Complaint, and therefore denies same.

113.        Denied to the extent that Paragraph 113 alleges or implies that Lyons' first learned of the reasons precipitating her departure from the Organizing Committee only in 2011. The College denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 113 of the Complaint, and therefore denies same.

114.        Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 114 of the Complaint, and therefore denies same.

115.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 115 of the Complaint, and therefore denies same.

116.     Denied to the extent that Paragraph 116 alleges or implies that Lyons' first learned of the reasons precipitating her departure from the Organizing Committee only in 2011. The College denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 116 of the Complaint, and therefore denies same.

117.     Denied to the extent that Paragraph 117 alleges or implies that Lyons' first learned of the reasons precipitating her departure from the Organizing Committee only in 2011. To the extent that Paragraph 117 of the Complaint is a legal conclusion, it does not require an answer and, to the extent an answer is required, the College denies the allegations.

118.     Denied to the extent that Paragraph 118 alleges or implies that Lyons' first learned of the reasons precipitating her departure from the Organizing Committee only in 2011. Denied to the extent that the Organizing Committee did not deny Lyons on opportunity to be heard.

119.     Paragraph 119 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations.

**Defendants' Allegedly Wrongful Acts**

120.     Paragraph 120 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations.

121.     Denied.  The College's initial website, for which Lyons provided information, came into existence in 2002.  The College purchased and began using the http://www.vsmr.org website in approximately 2010.  The remainder of Paragraph 121 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations.

122.     Admitted that a Face book page for the College was approved by the College and was created.  The remainder of Paragraph 122 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations.

123.     Paragraph 123 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations.

124.     Paragraph 124 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 124 of the Complaint, and therefore denies same.

125.     Paragraph 125 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 125 of the Complaint, and therefore denies same.

126.     Paragraph 126 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 126 of the Complaint, and therefore denies same.

127.     Paragraph 127 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 127 of the Complaint, and therefore denies same.

128.     Paragraph 128 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations set forth in Paragraph 128 of the Complaint, except the College admits that it lawfully uses the name ACVSMR for activities reasonably related to the College's educational missions, including some of the activities described above.

129.    Paragraph 129 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations.

130.    Paragraph 130 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations.

131.    Paragraph 131 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations set forth in Paragraph 131 of the Complaint, except the College admits that it was provisionally approved by the AVMA in approximately July 2012 and that it lawfully uses the name ACVSMR for activities reasonably related to the College's educational mission, , including some of the activities described above.

132.    Paragraph 132 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegation except admits that an similar or substantially similar item appeared in the Auburn Veterinarian magazine.

133.    Paragraph 133 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegation except admits that Auburn University hosted this symposium in 2010, and that the program included an update about the College and other professional organizations.

134.    Paragraph 134 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegation except admits that an similar or substantially similar statement was made by Oregon University.

135.    Paragraph 135 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations set forth in Paragraph 135 of the Complaint, except the College admits that it lawfully uses the name ACVSMR for activities reasonably related to the College's educational missions, and that the name ACVSMR is associated with the College by others.

136.     Paragraph 136 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations set forth in Paragraph 136 of the Complaint.

137.     Paragraph 137 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations set forth in Paragraph 136 of the Complaint.

## Gillette Requested To Cease And Desist

138.     Paragraph 138 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies that Lyons first learned only in September 2010 that the College was using the ACVSMR mark, as it had been using that mark since before Lyons departed from the Organizing Committee.

139.     Admitted that a similar or substantially similar demand was made, except that the letter containing this demand was dated September 20, 2010.

140.     Paragraph 140 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations except admits that Dr. Gillette did not send a response to counsel's letter of September 20, 2010.

141.     Paragraph 141 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies that it has engaged in any unlawful use of Lyons' intellectual property.

## Gillette's Alleged Unlawful Attempts To Misappropriate The ACVSMR Mark

142.     Paragraph 142 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations except admits that the College filed a petition April 25, 2011, filed a Petition for Cancellation of Lyons' registration of the ACVSMR mark.

143.     Admitted that on June 2, 2011, the Organizing Committee of the College incorporated the College as a nonprofit corporation in Colorado called the American College of

Veterinary Sports Medicine and Rehabilitation, Inc.  The remainder of the allegations in Paragraph 143 of the Complaint are denied.

### Damages

144.　　　Paragraph 144 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations.

145.　　　Paragraph 145 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations.

146.　　　Paragraph 146 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in the first sentence of Paragraph 146 of the Complaint, and denies the allegations set forth in the second sentence of Paragraph 146 of the Complaint.

147.　　　Paragraph 147 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations set forth in Paragraph 147 of the Complaint.

148.　　　Paragraph 148 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations set forth in Paragraph 148 of the Complaint.

### Causes of Action

### First Claim for Relief: Federal Trademark Infringement, 15 U.S.C. § 1114(1)

149.　　　The College incorporates each and every answer to the preceding paragraphs of the Complaint.

150.　　　Paragraph 150 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations set forth in Paragraph 150 of the Complaint, except the College admits that it lawfully uses the name

ACVSMR for activities reasonably related to the College's educational missions, including some of the activities described above.

151.     Paragraph 151 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations set forth in Paragraph 151 of the Complaint.

152.     Paragraph 152 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations set forth in Paragraph 152 of the Complaint.

153.     Paragraph 153 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations set forth in Paragraph 153 of the Complaint.

154.     Paragraph 154 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations set forth in Paragraph 154 of the Complaint.

## Second Claim for Relief: Trademark Infringement/Unfair Competition, 15 U.S.C. § 1125(a)

155.     The College incorporates each and every answer to the preceding paragraphs of the Complaint.

156.     Paragraph 156 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations set forth in Paragraph 156 of the Complaint, except the College admits that it lawfully uses the name ACVSMR for activities reasonably related to the College's educational mission, including some of the activities described above.

157.     Paragraph 157 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations set forth in Paragraph 157 of the Complaint.

158.     Paragraph 158 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations set forth in Paragraph 158 of the Complaint, except the College admits that it lawfully uses the name ACVSMR for activities reasonably related to the College's educational missions, and that the name ACVSMR is associated with the College by others.

159.     Paragraph 159 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations set forth in Paragraph 159 of the Complaint.

160.     Paragraph 160 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations set forth in Paragraph 160 of the Complaint.

161.     Paragraph 160 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations set forth in Paragraph 160 of the Complaint.

**Third Claim for Relief: Common Law Trademark Infringement**

162.     The College incorporates each and every answer to the preceding paragraphs of the Complaint.

163.     Paragraph 163 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations set forth in Paragraph 163 of the Complaint.

164.     Paragraph 164 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations set forth in Paragraph 164 of the Complaint.

165.      Paragraph 165 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations set forth in Paragraph 165 of the Complaint.

166.      Paragraph 166 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations set forth in Paragraph 166 of the Complaint.

## Fourth Claim for Relief: Federal Trademark Dilution: 15 U.S.C. § 1125(c)

167.      This allegation is in support of a claim that has been dismissed and therefore no response is required and, to the extent a response is required, the College denies the allegations.

168.      This allegation is in support of a claim that has been dismissed and therefore no response is required and, to the extent a response is required, the College denies the allegations.

169.      This allegation is in support of a claim that has been dismissed and therefore no response is required and, to the extent a response is required, the College denies the allegations.

170.      This allegation is in support of a claim that has been dismissed and therefore no response is required and, to the extent a response is required, the College denies the allegations.

171.      This allegation is in support of a claim that has been dismissed and therefore no response is required and, to the extent a response is required, the College denies the allegations.

## Fifth Claim for Relief: State Trademark Dilution

172.      The College incorporates each and every answer to the preceding paragraphs of the Complaint.

173.      Paragraph 173 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations set forth in Paragraph 173 of the Complaint.

174.     Paragraph 174 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations set forth in Paragraph 174 of the Complaint.

175.     Paragraph 175 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations set forth in Paragraph 175 of the Complaint.

176.     Paragraph 176 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations set forth in Paragraph 176 of the Complaint.

### Sixth Claim for Relief: Federal Copyright Infringement, 17 U.S.C. § 106

177.     The College incorporates each and every answer to the preceding paragraphs of the Complaint.

178.     Paragraph 178 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations set forth in Paragraph 178 of the Complaint.

179.     Paragraph 179 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations set forth in Paragraph 179 of the Complaint.

180.     Paragraph 180 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations set forth in Paragraph 180 of the Complaint.

181.     Paragraph 180 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations set forth in Paragraph 180 of the Complaint.

## Seventh Claim for Relief: Common Law Copyright Infringement

182.     This allegation is in support of a claim that has been dismissed and therefore no response is required and, to the extent a response is required, the College denies the allegations.

183.     This allegation is in support of a claim that has been dismissed and therefore no response is required and, to the extent a response is required, the College denies the allegations.

184.     This allegation is in support of a claim that has been dismissed and therefore no response is required and, to the extent a response is required, the College denies the allegations.

185.     This allegation is in support of a claim that has been dismissed and therefore no response is required and, to the extent a response is required, the College denies the allegations.

186.     This allegation is in support of a claim that has been dismissed and therefore no response is required and, to the extent a response is required, the College denies the allegations.

## Eighth Claim for Relief: Common Law Unfair Competition

187.     The College incorporates each and every answer to the preceding paragraphs of the Complaint.

188.     Paragraph 188 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations set forth in Paragraph 188 of the Complaint.

189.     Paragraph 189 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations set forth in Paragraph 189 of the Complaint.

190.     Paragraph 190 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations set forth in Paragraph 190 of the Complaint.

191.      Paragraph 191 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations set forth in Paragraph 191 of the Complaint.

### Ninth Claim for Relief: Misappropriation of Intellectual Property

192.      This allegation is in support of a claim that has been dismissed and therefore no response is required and, to the extent a response is required, the College denies the allegations.

193.      This allegation is in support of a claim that has been dismissed and therefore no response is required and, to the extent a response is required, the College denies the allegations.

194.      This allegation is in support of a claim that has been dismissed and therefore no response is required and, to the extent a response is required, the College denies the allegations.

195.      This allegation is in support of a claim that has been dismissed and therefore no response is required and, to the extent a response is required, the College denies the allegations.

196.      This allegation is in support of a claim that has been dismissed and therefore no response is required and, to the extent a response is required, the College denies the allegations.

197.      This allegation is in support of a claim that has been dismissed and therefore no response is required and, to the extent a response is required, the College denies the allegations.

198.      This allegation is in support of a claim that has been dismissed and therefore no response is required and, to the extent a response is required, the College denies the allegations.

### Tenth Claim for Relief: M.G.L. Chapter 93A

199.      This allegation is in support of a claim that has been dismissed and therefore no response is required and, to the extent a response is required, the College denies the allegations.

200.      This allegation is in support of a claim that has been dismissed and therefore no response is required and, to the extent a response is required, the College denies the allegations.

201.     This allegation is in support of a claim that has been dismissed and therefore no response is required and, to the extent a response is required, the College denies the allegations.

202.     This allegation is in support of a claim that has been dismissed and therefore no response is required and, to the extent a response is required, the College denies the allegations.

203.     This allegation is in support of a claim that has been dismissed and therefore no response is required and, to the extent a response is required, the College denies the allegations.

### Eleventh Claim for Relief: Libel and Slander

204.     This allegation is in support of a claim that has been dismissed and therefore no response is required and, to the extent a response is required, the College denies the allegations.

205.     This allegation is in support of a claim that has been dismissed and therefore no response is required and, to the extent a response is required, the College denies the allegations.

206.     This allegation is in support of a claim that has been dismissed and therefore no response is required and, to the extent a response is required, the College denies the allegations.

207.     This allegation is in support of a claim that has been dismissed and therefore no response is required and, to the extent a response is required, the College denies the allegations.

208.     This allegation is in support of a claim that has been dismissed and therefore no response is required and, to the extent a response is required, the College denies the allegations.

209.     This allegation is in support of a claim that has been dismissed and therefore no response is required and, to the extent a response is required, the College denies the allegations.

210.     This allegation is in support of a claim that has been dismissed and therefore no response is required and, to the extent a response is required, the College denies the allegations.

**Twelfth Claim for Relief: Loss of Business Opportunity**

211.     The College incorporates each and every answer to the preceding paragraphs of the Complaint.

212.     Paragraph 212 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations set forth in Paragraph 212 of the Complaint.

213.     Paragraph 213 of the Complaint is a legal conclusion and does not require an answer and, to the extent an answer is required, the College denies the allegations set forth in Paragraph 213 of the Complaint.

**Thirteenth Claim for Relief: Intentional Infliction of Emotional Distress**

214.     This allegation is in support of a claim that has been dismissed and therefore no response is required and, to the extent a response is required, the College denies the allegations.

215.     This allegation is in support of a claim that has been dismissed and therefore no response is required and, to the extent a response is required, the College denies the allegations.

216.     This allegation is in support of a claim that has been dismissed and therefore no response is required and, to the extent a response is required, the College denies the allegations.

217.     This allegation is in support of a claim that has been dismissed and therefore no response is required and, to the extent a response is required, the College denies the allegations.

218.     This allegation is in support of a claim that has been dismissed and therefore no response is required and, to the extent a response is required, the College denies the allegations.

219.     This allegation is in support of a claim that has been dismissed and therefore no response is required and, to the extent a response is required, the College denies the allegations.

## **Fourteenth Claim for Relief: Tortious Interference**

220.     This allegation is in support of a claim that has been dismissed and therefore no response is required and, to the extent a response is required, the College denies the allegations.

221.     This allegation is in support of a claim that has been dismissed and therefore no response is required and, to the extent a response is required, the College denies the allegations.

222.     This allegation is in support of a claim that has been dismissed and therefore no response is required and, to the extent a response is required, the College denies the allegations.

223.     This allegation is in support of a claim that has been dismissed and therefore no response is required and, to the extent a response is required, the College denies the allegations.

## AFFIRMATIVE DEFENSES

1.      Plaintiffs' claims are barred in whole or in part because the College owns the marks American College of Sports Veterinary Medicine and Rehabilitation and ACVSMR (collectively the "ACVSMR Mark").

2.      Plaintiffs' claims are barred in whole or in part because they lack a protectable interest in the ACVSMR Mark.

3.      Plaintiff's claims are barred in whole or in part by the doctrines of laches.

4.      Plaintiff's claims are barred in whole or in part by the doctrines of waiver.

5.      Plaintiff's claims are barred in whole or in part by the doctrines of estoppel

6.      Plaintiffs' claims are barred in whole or in part by the doctrine of acquiescence.

7.      Plaintiffs' claims are barred in whole or in part by the doctrine of unclean hands.

8.      Plaintiffs' claims are barred in whole or in part by the statutes of limitations.

9.      Plaintiffs' claims are barred in whole or in part by the doctrine of trademark misuse.

10.     Plaintiffs' claims are barred because the work or works alleged to have infringed Plaintiffs' copyrights were independently created.

11.     Plaintiffs' claims are barred in whole or in part because she suffered no damages.

12.     Plaintiffs' claims are barred in whole or in part because she failed to mitigate her alleged damages.

13.     Plaintiffs' claims are barred in whole or in part because any harm has been caused by her own conduct.

14.     Plaintiffs' claims are barred in whole or in part by a set-off.

15.     Plaintiffs' claims are barred in whole or in part because plaintiff abandoned the mark.

16.     Plaintiffs' claims are barred in whole or in part by the Fair Use doctrine.

17.     The relief sought would unjustly enrich Plaintiff.

18.     The Defendant's actions were innocent and non-willful.

19.     The Complaint, and the claim for relief alleged therein, fails to state a claim upon which relief can be granted.

20.     Defendant specifically reserves the right to assert such other and further affirmative defenses as become apparent in the course of discovery.

## COUNTERCLAIMS

Defendant and Counterclaim Plaintiff American College of Veterinary Sports Medicine and Rehabilitation (the "College") alleges as follows:

1.     These counterclaims for trademark infringement arise from the unauthorized use of the trademarks "American College of Veterinary Sports Medicine and Rehabilitation" and ACVSMR (collectively "ACVSMR" or the "ACVSMR Mark") by counterclaim defendants Sheila Lyons and Homecoming Farm, Inc. (collectively "Lyons" or "Plaintiffs") for purposes of promoting a confusingly similar service.  By using the same trademark, there is a high likelihood that the products of the parties will be confused with each other by consumers of veterinary medical services, members of the public, and members of the veterinary profession.

### Parties

2.     Defendant and Counterclaim Plaintiff, American College of Veterinary Sports Medicine and Rehabilitation, Inc., is a non-profit corporation organized on or about June 2011 under the laws of the State of Colorado.  The College's mission is to advance the art and science of veterinary medicine by promoting expertise in the structural, physiological, medical and surgical needs of athletic animals and the restoration of normal form and function after injury or illness.

3.     On information and belief, Plaintiff and Counterclaim Defendant Sheila Lyons, DVM is a veterinarian and a resident of the Commonwealth of Massachusetts.

4.     On information and belief, Plaintiff and Counterclaim Defendant Homecoming Farm, Inc. is a non-profit organization incorporated in New Hampshire.  Lyons has served as President of Homecoming Farm, Inc. since its founding.

5.      Homecoming Farm, Inc. was incorporated on or about November 18, 1992.  On February 1, 2001, Homecoming Farm, Inc.'s corporate charter was repealed, revoked and annulled by the State of New Hampshire for failure to pay filing fees.  On August 13, 2004, Lyons filed a Certificate of Revival with the New Hampshire Secretary of State.

## Jurisdiction and Venue

6.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338 and 1367.

7.      Venue is proper in this district pursuant to 28 U .S.C. §§ 1391.

## The AVMA and its Recognition OF VSO's

8.      The American Veterinary Medical Association, Inc. ("AVMA"), is a non-profit organization representing more than 82,500 veterinarians nationwide working in private and corporate practice, government, industry, academia, and uniformed services.

9.      The American Board of Veterinary Specialties ("ABVS") is a committee of the AVMA which serves as the umbrella organization for veterinary specialties within the United States.

10.     A veterinary specialty organization ("VSO") is an independent organization made up of specialists in a particular veterinary field.  Among other things, VSOs educate and certify veterinarians as specialists in a particular area of veterinary medicine.

11.     Once a VSO is recognized by the ABVS, it is known as a Recognized Veterinary Specialty Organization ("RVSO").

12.     The criteria and rules for recognition of an RVSO by the ABVS is set forth in the ABVS Policies and Procedures.  In order to gain recognition, a group of specialist veterinarians

must form an "organizing committee" and then submit a letter of intent to the AVMA, followed by a formal petition.  (**Exhibit A**).

13.     The first RVSO, recognized in 1950, was the American College of Veterinary Pathologists.  Later RVSOs included the American College of Veterinary Nutrition, the American College of Veterinary Microbiologists, the American College of Veterinary Ophthalmologists, the American College of Veterinary Anesthesiologists, the American College of Theriogenologists, the American College of Veterinary Behaviorists, the American College of Veterinary Dermatology, the American College of Veterinary Emergency & Critical Care, the American College of Veterinary Internal Medicine, the American College of Veterinary Preventive Medicine, the American College of Veterinary Radiology and the American College of Veterinary Surgeons.  (**Exhibit A**).

14.     As of 2012, twenty-two VSO's are recognized or provisionally recognized by the AVMA, most of which begin with the words "American College of Veterinary." (**Exhibit A**).

15.     After the AVMA and ABVS review the petition, they may grant provisional recognition of the VSO for between four and ten years, after which full recognition may be granted. (**Exhibit A**).

16.     Among the criteria stated in the ABVS Policies and Procedures is that each RVSO must be separately incorporated as a non-profit organization. (**Exhibit A**).

17.     Among the criteria stated in the ABVS Policies and Procedures is that each member of an organizing committee be exceptionally qualified.  Each petition must contain the curriculum vitae of each member of the organizing committee. (**Exhibit A**).

18.     According to the ABVS Policies and Procedures, all petitions for RVSO recognition are submitted for comment and input to the AVMA membership through the Journal of the American Veterinary Medical Association and on the AVMA website, to existing RVSOs and to other professional, commercial and academic entities. (**Exhibit A**).

### The Organizing Committee

19.     Doctor Robert Gillette is an Associate Research Professor of veterinary medicine at Auburn University.  He is the Director of the school's Veterinary Sports Medicine program, which was established in 1991.

20.     Prior to April 1998, Dr. Gillette contacted the AVMA to inquire about establishing a RVSO in the field of veterinary sports medicine.

21.     In the April 1998 newsletter of the American Canine Sports Medicine Association, of which Dr. Gillette was President, Dr. Gillette announced his interest in creating a specialty board certification in canine sports medicine, and related his contact with the AVMA. (**Exhibit B**).

22.     In 1999, Dr. Gillette attended a conference in Oregon entitled the First International Symposium on Rehabilitation and Physical Therapy in Veterinary Medicine. At the conference,  he discussed the field of veterinary sports medicine and the establishment of a specialty board in this field with several veterinarians, including Lyons. Dr. Gillette discussed with Lyons his prior communication with the AVMA about this idea.  Lyons expressed that she too was interested in this project.

23.     In or about 2000, Lyons and Gillette became the first members of the Organizing Committee, the aim of which was to seek AVMA and ABVS recognition of a new specialty in veterinary sports medicine.

24.     On December 31, 2001, Lyons wrote to Dr. Gillette, and stated: "Just checking in to see if any progress with the board formation.  Would love to do what I can to help.  Let me know what is needed."  Lyons' name appeared at the bottom of that e-mail as  "Sheila Lyons, DVM, PhD." (**Exhibit C**).

25.     In other e-mails about the formation of the Organizing Committee, Lyons described herself as "Sheila Lyons, DVM, PhD."

26.     Prior to October 2002, Dr. Hilary Clayton joined the Organizing Committee.

27.     In October 2002, the Organizing Committee held its first group meeting and agreed that the name of the proposed VSO would be the "American College of Veterinary Sports Medicine and Rehabilitation."

28.     Lyons was present at the October 2002 meeting.  Lyons did not object to the Organizing Committee using the name "American College of Veterinary Sports Medicine and Rehabilitation,"  nor did she state that she or Homecoming Farm, Inc. had any ownership interest in that name.

29.     The name "American College of Veterinary Sports Medicine and Rehabilitation" incorporates the naming convention established by RVSOs since 1950, a majority of which begin their name with the "American College of Veterinary. . .".  (**Exhibit A**).

30.     After the October 2002 meeting, three other veterinarians joined the Organizing Committee.  Dr. Gillette was elected chair.

**The College's First Website**

31.     In or about December 2002, Dr. Gillette created a web page for the Organizing Committee at http://www.sportsvet.com/ACVSMR in order to collect information in one place while drafting a Letter of Intent to the AVMA.  Sportsvet.com is a site which Dr. Gillette owns.

32.     In preparing the website and the Letter of Intent, Dr. Gillette collected the credentials of the Organizing Committee members.

33.     On December 22, 2002, Lyons forwarded a rough draft of her curriculum vitae to Dr. Gillette.  That document represented that Lyons had a "BS; Physics, 1979," a PhD; Physics, 1981," and a "DVM; Tufts, 1985."  That document also listed other specialized training. (**Exhibit D**).

34.     On December 30, 2002, Gillette announced to the Organizing Committee that the website was on-line.  The website created by Dr. Gillette was entitled the "American College of Veterinary Sports Medicine and Rehabilitation." (**Exhibit E**).

35.     The website included the credentials that had been provided by the members of the Organizing Committee.  (**Exhibit E**).

36.     On January 2, 2003, Lyons responded to Gillette's announcement in an email to the Organizing Committee, in which she stated "Thanks for the great website for our project Rob." (**Exhibit F**).

37.     On January 2, 2003, the same day, Lyons registered the domain names ACVSMR.com and ACVSMR.org in the name of Homecoming Farm, Inc. (**Exhibit G**).

**Lyons' Credentials**

38.     In or about January 2003, the Organizing Committee drafted a Letter of Intent to the AVMA, announcing its intention to apply for recognition as an RVSO.

39.     On or about January 13, 2003, Gillette emailed Lyons and asked: "I understand your DVM was from Tufts, but where were the other degrees from."  Lyons responded: "BS; Physics, University of Massachusetts Amherst, 1979, PhD; Physics UMass/MIT joint program, 1981; Tufts Veterinary School, 1985." (**Exhibit H**).

40.     On January 19, 2003, Gillette provided the Organizing Committee with a draft Letter of Intent, which included the credentials Lyons had provided to Gillette.  Dr. Gillette asked the members for feedback, and stated that the "important feedback that I need is the credential information.  Please go over what I have written and let me know if you approve or want me to make any changes."   On January 20, 2003, Lyons responded, stating that the Letter of Intent "looks fine."  (**Exhibit I**).

41.     On or about January 24, 2003, Dr. Gillette sent Letter of Intent to the ABVS on behalf of the Organizing Committee of the  "American College of Veterinary Sports Medicine and Rehabilitation," and included the curriculum vitae of all Organizing Committee members, including Lyons. (**Exhibit J**).

42.     Lyons made no effort to change or correct her credentials as listed in the Letter of Intent or on the College's website.

43.     On or before June 6, 2004, Lyons promoted or organized a seminar to raise funds for Homecoming Farm, Inc., with herself as the speaker, in West Barnstable, MA.  The promotional poster for the seminar stated that it was being given by "Sheila Lyons, DVM, PhD"

and that Lyons "earned her PhD in Elementary Particle and Laser Physics in 1981 . . ."  A

brochure distributed in association with this event stated that "Dr. Sheila Lyons, the founder and

president of Homecoming Farm, Inc., earned her PhD in Elementary Particle and Laser Physics

in 1981 . . ." (**Exhibit K**).

44.     In July 2004, the Homecoming Farm website stated that "Dr. Sheila Lyons earned

her PhD in Elementary Particle and Laser Physics in 1981 . . ." (**Exhibit L**).

### Events Precipitating Lyons' Departure from the Organizing Committee

45.     At a meeting of the Organizing Committee in Chicago on or about May 18, 2004,

Lyons suggested that the College could be funded through the efforts of Homecoming Farm, Inc.

The Organizing Committee declined.

46.     At the May 18, 2004 meeting, Lyons presented draft articles of incorporation and

by-laws for "The American College of Veterinary Sports Medicine and Rehabilitation."  These

documents do not mention Homecoming Farm, Inc. (**Exhibit M**).

47.     The Organizing Committee was to meet again at a conference of the AVMA,

which took place in Philadelphia in July 2004.

48.     Prior to the Philadelphia conference, Dr. Gillette asked the members of the

Organizing Committee to provide transcripts of their credentials.

49.     In late June 2004, Dr. Gillette was informed by the AVMA that it had received

certain complaints about Lyons, including by an individual named Betsy Erickson.

50.     Dr. Gillette was subsequently contacted directly by the complaining parties, who

also provided him with the poster and brochure distributed by Lyons in connection with the

event in Massachusetts. (**Exhibit K**).

51.     As a result of these communications, the College learned that Lyons had been using the name of the College to engage in fundraising activities for Homecoming Farm, Inc., including the event in Massachusetts.

52.     In the context of these complaints, Dr. Gillette was asked by the complainants if he could verify Lyons' credentials.

53.     The College had not been aware of these fundraising activities prior to being informed of them by the AVMA.

54.     On or before July 1, 2004, Dr. Gillette informed Lyons and other members of the Organizing Committee about these complaints.  (**Exhibit N**).

55.     On July 1, 2004, Lyons sent an email to Gillette which stated: "Thanks for letting me know what is going on.  No good deed . . ."  In that email, Lyons confirmed that she had offered to raise money for the College at the Chicago meeting, but stated that she had not done so yet. (**Exhibit N**).

56.     On July 2, 2004, Dr. Gillette sent a letter to Lyons in which he requested that Lyons provide information regarding her credentials and about Homecoming Farm, Inc.  That same day, Dr. Gillette asked all members of the organizing committee to refrain from fundraising activities using the name of the College.  (**Exhibit N**).

57.     Dr. Gillette followed up on his request for Lyons' credentials on July 12, 2004. (**Exhibit O**).

58.     On July 13 and July 19, 2004, an employee of Homecoming Farm, Inc., Lauren Kingston, emailed Dr. Gillette and stated that Lyons was unable to obtain proof of her training owing to various logistical problems.

59.     By July 26, 2004, all members of the Organizing Committee had provided their academic transcripts to Dr. Gillette except Lyons.

60.     At the July 26, 2004 meeting of the Organizing Committee, Lyons claimed that she had never represented herself as holding a PhD.

61.     On July 26, 2004, the Organizing Committee asked Lyons to resign her seat owing to the above-described issues, which she did.

62.     Prior to July 26, 2004, Lyons represented to Dr. Gillette and the Organizing Committee that she had earned a PhD.

63.     On information and belief, Lyons does not hold a PhD.

64.     On information and belief, Lyons does not hold a post-graduate degree in particle physics.

65.     On information and belief, Lyons does not hold a post-graduate degree from the University of Massachusetts.

66.     On information and belief, Lyons does not hold a post-graduate degree from the Massachusetts Institute of Technology.

67.     Lyons statement to the Organizing Committee that she had never claimed to have a PhD was false.

68.     On July 31, 2004, Dr. Gillette visited and printed out a copy of the Homecoming Farm, Inc. website, which still stated that "Dr. Sheila Lyons earned her PhD in Elementary Particle and Laser Physics in 1981 . . ." (**Exhibit K**).

### The Continuing Work of the Organizing Committee

69.     In or about 2008, the Organizing Committee filed a petition with the ABVS for recognition of the College as an RVSO.

70.     Pursuant to the rules of the ABVS, the petition was published for public comment for one year.  Lyons did not submit a comment.

71.     In May 2010, the ABVS and AVMA provisionally approved the College as a RVSO.

72.     Upon learning of the provisional approval, on May 5, 2010, Dr. Gillette attempted to register ACVSMR.org but was unable to because Lyons had already done so.  He registered the domain name VSMR.org for the College instead.

73.     On June 2, 2011, the College incorporated as a non-profit in Colorado.

### Lyons' Infringement

74.     Prior to July 24, 2004, Lyons did not use the ACVSMR mark except in connection with her purported and actual affiliation with the College as a member of the Organizing Committee.

75.     As of July 31, 2004, the Homecoming Farm website did not use the ACVSMR mark or state that the College was a project of Homecoming Farm. (**Exhibit L**).

76.     As of July 31, 2004, the Homecoming Farm website stated that "Dr. Lyons is a founding member of a new committee of veterinary experts who will establish guidelines for the establishment of Sports Medicine and Rehabilitation as recognized specialty areas in Veterinary Medicine." (**Exhibit K**).

77.     On information and belief, at some time after she left the Organizing Committee, Lyons began to use the ACVSMR mark in connection with the activities of Homecoming Farm, Inc., including on websites and in notices and statements to veterinary organizations and the general public.

78.     The College learned about Lyons' use of the ACVSMR mark in or about 2010.

79.     The activities of Homecoming Farm, Inc. that are offered under the ACVSMR mark are similar to those engaged in by the College, in that they purport to include educational seminars, internships and fellowships in the area of sports veterinary medicine.

80.     Lyons' use of the ACVSMR mark is likely to cause confusion in the minds of consumers of veterinary medical services, members of the public, and members of the veterinary profession.

81.     Lyons' use of the ACVSMR mark has already created actual confusion among the general public.

82.     Neither Homecoming Farm, Inc. nor any project operating under its auspices is a recognized RVSO or is otherwise affiliated with the AVMA.

**Lyons' Subsequent Registration of the ACVSMR Mark**

83.     On or about May 24, 2005, without knowledge of the College, Lyons applied for and obtained registration of the ACVSMR mark on the Supplemental Register.  The registration number is 3,088,963 (the "'963 Registration")

84.     Supplemental Register marks are not published for opposition prior to registration. *See* 15 U.S.C. § 1092.

85.     A mark with only supplemental registration cannot become incontestable, and does not carry with presumptions of validity, ownership or exclusive rights. 15 U.S.C. § 1094.

86.     On or about April 25, 2011, the College filed a petition with the Patent and Trademark Office ("PTO") to cancel the Supplemental Registration of the '963 Registration.

87.     On or about December 5, 2011, Lyons applied to register the ACVSMR mark on the Principal Register.  The serial number of her application is 78,635,662 (the "'662 Application").

88.     On December 12, 2011, Lyons filed the present action.

89.     On April 12, 2012, the cancellation proceeding before the PTO was stayed pending the outcome of the present action.

90.     On July 9, 2012, the College filed an opposition to the '662 Application.

91.     On or about August 21, 2012, Lyons filed a motion to suspend the opposition proceedings with regard to the '662 Application pending the outcome of the present action.

## COUNT I: Trademark Infringement, False Designation of Origin, and Unfair Competition Under 15 U.S.C. § 1125(a)

92.     The College realleges and incorporates herein the allegations set forth in the foregoing paragraphs of these counterclaims.

93.     The unauthorized use of the ACVSMR mark by Plaintiffs Lyons and Homecoming Farm, Inc. constitutes a use in commerce of a word, term, name symbol, or device, or some combination thereof, or a false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion or mistake, or to deceive as to the affiliation, connection, or association among and between the parties and

the two products, or confusion or mistake as to the origin, sponsorship, or approval among and between the parties and the two products.

94.     The College has been, is now, and will be irreparably injured and damaged by Plaintiffs' conduct as described above, and unless enjoined by the Court, the College will suffer further harm to its trademark, reputation and goodwill.  This harm constitutes an injury for which the College has no adequate remedy at law.

## COUNT II: Common Law Trademark Infringement

95.     The College realleges and incorporates herein the allegations set forth in the foregoing paragraphs of these counterclaims.

96.     The unauthorized use of the ACVSMR mark by Plaintiffs Lyons and Homecoming Farm, Inc. in connection with their goods and services is likely to cause confusion, or to cause mistake, or to deceive consumers of veterinary medical services, members of the public, and members of the veterinary profession in violation of Massachusetts common law.

97.     The College has been, is now, and will be irreparably injured and damaged by Plaintiffs' trademark infringement, and unless enjoined by the Court, the College will suffer further harm to its trademark, reputation and goodwill.  This harm constitutes an injury for which the College has no adequate remedy at law.

## COUNT III: Cyberpiracy under 15 U.S.C. § 1125(d)

98.     The College realleges and incorporates herein the allegations set forth in the foregoing paragraphs of these counterclaims.

99.     Lyons registered and/or uses a domain name identical or confusingly similar to the ACVSMR mark.

100.     The College is the rightful owner of the ACVSMR mark.

101.     Lyons has a bad faith intent to profit from the ACVSMR mark.

102.     The College has been, is now, and will be irreparably injured and damaged by Plaintiffs' actions, and unless enjoined by the Court, the College will suffer further harm to its trademark, reputation and goodwill.  This harm constitutes an injury for which the College has no adequate remedy at law.

**COUNT IV: Trademark Cancellation of '963 Registration under 15 U.S.C. § 1119**

103.     The College realleges and incorporates herein the allegations set forth in the foregoing paragraphs of these counterclaims.

104.     Lyon's continued use and registration of the ACVSMR mark is likely to cause confusion in the minds of consumers of veterinary medical services, members of the public, and members of the veterinary profession.

105.     Lyons' continued use of the ACVSMR mark is likely to cause damage and injury to the professional reputation of the College.

106.     Lyons does not own the ACVSMR mark.

107.     The '963 Registration therefore warrants cancellation.

108.     Unless and until the '963 Registration is cancelled, the College will continue to be damaged.

**COUNT V: Trademark Cancellation of the '662 Application under 15 U.S.C. § 1119 or in the alternative Declaratory Judgment**

109.     The College realleges and incorporates herein the allegations set forth in the foregoing paragraphs of these counterclaims.

44

110.     Lyon's continued use of the ACVSMR mark is likely to cause confusion in the minds of consumers of veterinary medical services, members of the public, and members of the veterinary profession.

111.     Lyons' continued use of the ACVSMR mark is likely to cause damage and injury to the professional reputation of the College.

112.     Lyons does not own the ACVSMR mark and her use of it has not acquired secondary meaning.

113.     The '662 Application therefore warrants cancellation or denial.

114.     Unless and until the '662 Application is cancelled or denied, the College will continue to be damaged.

115.     In the alternative, there is a real and actual controversy between Lyons and the College regarding whether the '662 Application should be denied.

116.     Absent a resolution of this matter, the parties will be uncertain as to their trademark rights.

117.     The College therefore respectfully requests that the Court declare the respective rights and obligations of the parties with respect to the '662 Application, including that Lyons may not register the ACVSMR mark on the Principal Register.

### COUNT VI: Unfair and Deceptive Practices: Mass. Gen. L. 93A, § 11 (Lyons only)

118.     The College realleges and incorporates herein the allegations set forth in the foregoing paragraphs of these counterclaims.

119.    By using the ACVSMR mark and falsely representing herself to be associated with The American College of Veterinary Sports Medicine and Rehabilitation, after her departure from the Organizing Committee and continuing to the present day, Lyons is engaging in an unfair or deceptive act or practice.

120.    The College has suffered harm as a result of Lyons' conduct.

121.    Lyons is engaging in commerce within the meaning of Mass. Gen. L. c. 93A, § 1 *et seq*.

122.    Lyons' acts and practices have occurred primarily and substantially in Massachusetts, where she resides.

## REQUEST FOR RELIEF

WHEREFORE, the College requests relief as follows:

1.    Enter judgment in favor of the College on all counts;

2.    Enter a preliminary injunction and a permanent injunction restraining Lyons and Homecoming Farm, Inc., as well as its officers, directors, employees, agents, affiliates, successors, assigns, and all those in privity or acting in concert with them, from in any way using, displaying, advertising, copying, imitating, or infringing upon the trademarks "American College of Veterinary Sports Medicine and Rehabilitation" and ACVSMR (collectively the "ACVSMR Mark"), or from using confusingly similar variations of the ACVSMR Mark, or from otherwise unfairly competing with the College;

3.    Order that Lyons and Homecoming Farm, Inc. transfer the domain names ACVSMR.org and ACVSMR.com to the College;

4.    Order that the '963 Registration be canceled pursuant to 15 U.S.C. § 1119;

5.      Order that the '662 Application be canceled or denied pursuant to 15 U.S.C. §

1119, or alternatively declare that Lyons may not register the ACVSMR Mark on the Principal

Register;

6.      Order that Lyons and Homecoming Farm, Inc. pay the College's attorneys' fees

and costs as provided by 15 U.S.C. § 1117, 17 U.S.C. § 505, Chapter 93A and other applicable

law;

7.      Award damages and multiple damages as permitted by law;

8.      Grant such other and further relief as is just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, the College hereby demands a jury trial on all claims so

triable.

Respectfully submitted,

The American College of Veterinary
Sports Medicine and Rehabilitation, Inc.
and its Individual Directors,

by their Attorneys

/s/ David Kluft
Julia Huston (BBO# 562160)
David Kluft (BBO# 658970)
Foley Hoag LLP
Seaport West
155 Seaport Boulevard
Boston, Massachusetts 02210-2600
Telephone:  617 832 1000
Dated:  August 28, 2012          Facsimile:  617 832 7000
dkluft@foleyhoag.com

47

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on the above date.

/s/ David A. Kluft

B4045309v1