UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SHEILA LYONS, DVM and HOMECOMING FARM, INC., | ) ) ) ) ) | |
| Plaintiffs | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 11-CV-12192-WGY |
| ROBERT GILLETTE, THE BOARD OF DIRECTORS OF THE AMERICAN COLLEGE OF VETERINARY SPORTS MEDICINE AND REHABILITATION, INC., and THE AMERICAN VETERINARY MEDICAL ASSOCIATION, INC., | ) ) ) ) ) ) ) ) ) ) | |
| Defendants | ) ) | |

**PLAINTIFFS' REPLY MEMORANDUM TO DEFENDANTS' POST HEARING SUBMISSIONS**

The plaintiffs hereby submit this reply memorandum in order to correct certain omissions and misstatements of fact contained in the defendants' post hearing submissions.

**I**     **The Evidence of Secondary Meaning Is Overwhelming and Satisfied the USPTO's Requirements for Listing of the Mark on the Principle Register**

In their effort to avoid liability by denying that Doctor Lyons' mark has acquired secondary meaning, each defendant ignores the fact that on December 27, 2011, the USPTO determined that Doctor Lyons' mark had acquired secondary meaning and approved Doctor Lyons' mark as having met its strict standards for listing on the USPTO's Principle Registry. Under USPTO regulations, proof of continuous, long term and extensive use of the mark for more than five years following its registration on the USPTO's Supplemental Register meets the

USPTO's standard for acquired distinctiveness or secondary meaning.  See, *15 U.S.C. §1062*. A presumption of secondary meaning arises after five years of continuous use of a trademark in commerce. Id.  Doctor Lyons satisfied these requirements, as she has done here, by providing overwhelming evidence of her continuous *bone fide* use of the mark in commerce for more than 18 years which led to the USPTO's determination that he mark had acquired secondary meaning. Despite the urging of the defendants, the standard before this court should not be any different. [1]

Contrary to the defendants' assertion, the USPTO does not require surveys or polling data to determine secondary meaning – although sometimes this can be useful for certain types of marks. But, secondary meaning of a tradename associated with the practice of veterinary medicine in keeping with certain methodologies and ethical standards may be established, as it is here, by evidence of the mark's reputation nationally and internationally in the veterinary community and sport horse industry, in research, educational programs, clinical seminars, conferences, workshops, internships and externships for veterinary students and grant support created and obtained in its name.  See, *President and Trustees of Colby College – New Hampshire,* 508 F. 2d 804, 807-08 (1st Cir. 1975).  Doctor Lyons' work as a renown lecturer around the world, her appearances as expert before Congress and commentator on virtually every major network or news program as the "Founder of the American College of Veterinary Sports Medicine and Rehabilitation" as well as her testimony on behalf of law enforcement officials across the nation which has led to sweeping changes in the equine sport industry has also contributed to the mark's distinctiveness. Doctor Lyons has also used the ACVSMR mark continuously since 1996 in seeking financial support for her work from various government,

---

[1] As the AVMA pointed out on Page 8 of its memorandum in opposition to the plaintiffs motion for summary judgment,  registrants who have satisfied USPTO formalities by the filing of a Section 15 affidavit of continuous use are entitled to a determination that their mark is  in order to demonstrate that a mark is "incontestable".

2

industry, private and public philanthropic organizations and, contrary to the representation contained on Page 7 of the AVMA's memorandum, has raised more than 1.9 million dollars in the name of ACVSMR as reported on federal income tax returns. [Declaration, ¶21, Exhibit G]

Through the use of Doctor Lyons' mark in connection with all of her professional activities and through the marketing of her ACVSMR mark in educational programs, demonstrations, lectures, research, clinical and charitable humanitarian services conducted in the name of and in accordance with certain medical and ethical standards, it has acquired unique meaning nationally and internationally. Having satisfied the USPTO's strict standards for determination that her mark had indeed acquired secondary meaning, this Court should simply affirm the determination already made by the USPTO.[2]

## II     The Feinberg Letter Demonstrates That the Establishment of the New Veterinary Specialty Organization Would Remain a Project and Under the Control of Homecoming Farm, Inc.

In 2004, in furtherance of her well-developed plan to create a new veterinary specialty in rehabilitation and sports medicine, Doctor Lyons *privately* engaged the services of Attorney Paul Feinberg of the law firm of Baker & Hostetler, LLP, an attorney specializing in the formation of non-profit organizations for the purpose of preparing articles of organization and by-laws for this new not-for-profit corporation. In a letter dated April 16, 2004, which was provided to each prospective member of the Organizing Committee and the AVMA's liaison at or before the Chicago meeting, Attorney Feinberg writes:

> "The purpose of this letter is to confirm our engagement as counsel to Homecoming Farm, Inc. ("HFI") to provide advice on tax exempt organization matters, in particular the formation of a new nonprofit tax exempt corporation to be named *"American College of Veterinary Sports Medicine and Rehabilitation" (the College")* and to provide certain information about our fees, billing and

---

[2] By contrast, though unauthorized, by its own admission, the College's first allegedly *bone fide* commercial use of the mark didn't come until 2011 when the College was incorporated in the state of Colorado after receiving a written cease and desist request from Doctor Lyons.

3

collection policies, and other terms that will govern our relationship. You have asked us, *on behalf of HCI*, to perform the following services or functions: . . ." (emphasis supplied).

Contrary to the defendants' assertions, Attorney Feinberg's letter makes it perfectly clear that the establishment of this new corporation for the VSO to be recognized by the AVMA would remain a project of and controlled by Homecoming Farm, Inc. and Doctor Lyons. [Declaration, ¶235, see also, Exhibit HH]  No one, including Doctor Gillette who acknowledged receiving the Feinberg letter, protested or raised any questions that ACVSMR (including the registered ACVSMR mark) would remain under the control of Homecoming Farm in 2004.

**III      The By-Laws**

In its post hearing memorandum at Page 4, the College argues there was no infringement because Doctor Lyons was not the author of the College's by-laws which were created for the incorporation of the College in 2011.  The plaintiffs have never made such a claim.

What the plaintiffs have alleged and what is clear from a comparison of the Petition with separate by-laws written and copyrighted by Doctor Lyons in 2004, is that the description of the curriculum of the proposed new veterinary specialty contained in the by-laws written by Doctor Lyons, was copied by the College.  These are separate documents and should not be confused.  Likewise, the plaintiffs do not claim authorship of the "legalese" contained in this document.

What Doctor Lyons does claim authorship of and what is protected in the by-laws written and copyrighted by her are the descriptions of the curriculum, methods, scientific basis, mission, objectives and means by which new veterinarians would be educated and certified in this new specialty.

**IV   The College Falsely Asserts That the Sole Purpose of the Mark was to Seek AVMA Approval of a New Veterinary Specialty Organization**

Without any evidence to support its assertion, the College states on Page 6 of its post-hearing memorandum that the sole purpose of the mark was to seek AVMA approval of a new veterinary specialty organization. This assertion is simply false. In fact, at her deposition, Doctor Lyons testified that it was her intention to "conduct research, develop the educational programs" and that the establishment of a new specialty board at some point in the future was only one possibility depending upon the outcome of that work. [Deposition, Lyons, Vol. I, pp. 103-105; II, p. 283.] The purpose behind the establishment of the American College of Veterinary Sports Medicine and Rehabilitation in 1996, as stated in the *Equine Excellence Initiative*, was the establishment of a new *veterinary specialty* in rehabilitation and sports medicine *not a veterinary specialty board.* This is an important distinction but one which the defendant College has repeatedly ignored because it does not fit the false narrative it has attempted to construct in order to avoid liability.

As stated in the Equine Excellence Initiative, written by Doctor Lyons in 1995, and as Doctor Lyons has repeatedly testified at her deposition and in her affidavits, describes the rationale for the creation of a new *specialty* in veterinary sports and rehabilitation medicine and reads, in part, as follows:

<u>The American College of Veterinary Sports Medicine
and Rehabilitation Project Description</u>

The American College of Veterinary Sports Medicine and Rehabilitation (ACVSMR) is the name for the project of Homecoming Farm, Inc. that will go forward to provide education to veterinarians; veterinary students; veterinary physical therapists; farriers; researchers; horsemen; equine health care managers and others worldwide. It will be modeled after the human medical specialty in its scientific methods, educational structure for paraprofessionals; and will maintain a relationship with physician advisors so that we can take full advantage of ongoing developments in the human specialty field. The ACVSMR will establish a system for injury reporting and

>  clinical service data collection and storage utilizing the internet so that epidemiological evidence can be collected and shared with researchers worldwide. We will act as advisors to regulatory boards for animal sports so as to ensure that animals are humanely and responsibly managed for the benefit and protection of both the general public's interests and the animals' wellbeing and safety. A main research center will be established and satellite facilities will follow as staffing through our training programs accommodates. Affiliations will be established with equine rescue organizations for the purpose of partnering with our educational programs so that students can get hands on experience in the new techniques and so that the horses have an opportunity to recover.

There is absolutely no mention of the establishment of a new specialty board or of seeking AVMA approval of anything. Instead, this project was broader in scope and included research and development of the science associated with the contemplated new specialty in rehabilitative and sports medicine as well as the education of veterinarians and a host of other professionals and paraprofessionals in the field. In this sense, the work, the goals and objectives of the ACVSMR project go far beyond the mere establishment of a new specialty board recognized by the AVMA and such approval was neither necessary nor even contemplated by Doctor Lyons when she conceived the project.

Finally, on Page 9 of its post-hearing memorandum, the College takes a gratuitous *ad hominem* swipe at Doctor Lyons stating that she is an "unreliable witness" and has brought this case to "punish a group of distinguished veterinarians". Nothing could be further from the truth. Doctor Lyons has brought this action in order to protect the valuable asset and goodwill represented by her tradename and copyrighted work product which required 15 years to develop which have been plagiarized by the defendants. The defendants were warned that their infringing activity would bring legal action. They have no one but themselves to blame for the position in which they have knowingly and intentionally placed themselves.

6

V       **This Court Should Reinstate the Plaintiffs' Defamation Claims**

Finally, this Court should reinstate the plaintiff's defamation claims which were dismissed on July 11, 2012 in response to the defendants' motion.  In ruling on the misappropriation of intellectual property claims, this Court ruled that the original claims accrued in 2005 and were thus barred by the applicable statute of limitations.  However, discovery conducted in this case since the time of the Court's ruling on the defendant's motion to dismiss has established that Doctor Gillette and other members of the College and the AVMA republished those defamatory statements in 2010 and widely disseminated them even after the allegations were retracted in writing.

In an email dated July 23, 2010 5:03 PM, Doctor Gillette stated that "We had recused her from any relationship with our organizing group.  *This was after she had initiated some inappropriate fund raising activities and after we found she had falsified some of her credentials*."  (emphasis added)  Doctor Lyons has steadfastly asserted that these statements are untrue and Doctor Gillette knew these statements to be untrue. [Declaration, ¶236]  In an email dated July 27, 2010 2:15 PM which was sent by Doctor Brandt of the AVMA in reply to the email from Doctor Gillette, Doctor Brandt states "There was another piece of advice that was offered by our legal counsel.  He cautions that the ACVSMR and you be careful about making statements regarding Dr. Lyons.  *Telling others that she "falsified some of her credentials" could be viewed as defamatory.*"  [Declaration, ¶237; see also, Exhibit II]

In 2010, Doctor Elizabeth Sabin of the AVMA also republished Doctor Gillette's false and defamatory statements about Doctor Lyons when she wrote to Doctor Brandt, of the AVM.  In this email, dated July 22, 2010 1:11 PM, Doctor Sabin forwards a copy of Doctor Gillette's defamatory 2005 email which he sent to Doctor Sabin and numerous other recipients on

7

November 25, 2005 11:49 AM. [Declaration, ¶242] In this 2005 email Doctor Gillette states "*At the request of the initial committee, Dr. Lyons rescinded her seat on the committee. The committee never asked her to seek outside funding nor had we ever requested outside financial assistance for our work. This was explained both in writing and verbally, to the parties filing the complaint. They have accepted that this issue was with Dr. Lyons and not the committee and that Dr. Lyons' actions and requests were not representative of the committee. The issue has been resolved.*" [Declaration, ¶242; see also, Exhibit LL]

Also in 2010, Doctor Dee of the AVMA also republished false and defamatory statements about Doctor Lyons when he wrote to Doctor Brandt of the AVMA in July of 2010. In this email dated July 12, 2010 3:28 PM Doctor Dee states "*She was kicked off the original working group because she started soliciting funds from donors in the name of the college without permission*. The Organizing Committee is probably going to alter the name to ACVSMR to avoid a protracted legal battle . . . A stick[sic] wicket as they say, but I hate to see the SOB's win over the good guys." [Declaration, ¶238] Doctor Lyons has consistently asserted that the statement that Doctor Lyons was "kicked off" the Organizing Committee for "soliciting funds from donors in the name of the college without permission" is not true and is a repetition of the allegedly false statements made by Doctor Gillette about Doctor Lyons and used as a pretext for her removal from the committee and these statements have been retracted. [Declaration, ¶238]

According to these emails, Doctor Gillette's 2005 defamatory statements were copied to numerous recipients, on July 12, 2010, July 13, 2010, July 22, 2010, July 23, 2010, July 27, 2010 and September 29, 2010. [Declaration, ¶243] In the case of defamatory statements repeated by a third party, "[t]he republisher of a defamatory statement is subject to liability as if he had

originally published it" and any future publication of the false statements complained of may form the basis of an entirely new cause of action against the republisher. *Flynn v. The Assoc'd Press*, 401 Mass. 776, 780 n. 5 (1988). Accordingly, Doctor Lyons' defamation claims should be reinstated.

Respectfully submitted,

By the Plaintiffs,

| | |
|---|---|
| Camille F. Sarrouf /s/ | Stephen J. Lyons /s/ |
| _____ | _____ |
| Camille F. Sarrouf (BBO #442440) | Stephen J. Lyons (BBO #309840) |
| SARROUF LAW, LLP | KLIEMAN & LYONS |
| 115 Broad Street, 4TH Floor | 115 Broad Street, 4TH Floor |
| Boston, MA 02110 | Boston, MA  02110 |
| Telephone: 617-227-5800 | Telephone:  617-443-1000 |
| cfs@sarrouflaw.com | sjlyons@kliemanlyons.com |

Dated: May 21, 2013

CERTIFICATE OF SERVICE

      I hereby certify that on this 21st day of May, 2013, the foregoing document was electronically filed and served upon all parties of record via the Case Management/Electronic Case Filing (CM/ECF) system

      /s/ Stephen J. Lyons

      _____

      Stephen J. Lyons